Argued and submitted February 10, affirmed June 1, 2005

## William PRESLEY,
## dba Westside Classic Buicks,
### *Petitioner,*

*v.*

## BUREAU OF LABOR AND INDUSTRIES,
### *Respondent.*

## 66-03; A123242

112 P3d 485

John A. Wolf argued the cause for petitioner. With him on the brief was Speer, Hoyt, Jones, Feinman, Poppe, Wolf & Griffith, P.C.

Richard D. Wasserman, Attorney-in-charge, argued the cause for respondent. On the brief were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General.

Before Edmonds, Presiding Judge, and Wollheim* and Schuman, Judges.

SCHUMAN, J.

---

* Wollheim, J., *vice* Richardson, S. J.

## SCHUMAN, J.

The Commissioner of the Bureau of Labor and Industries (BOLI) issued an order requiring petitioner, the owner of a used car dealership, to pay claimant unpaid wages, penalty wages, and a civil penalty totaling $7,436.75. Petitioner seeks judicial review, contending that claimant was an independent contractor and not an employee; that, if he was an employee, then he received full compensation in the form of a used car; and that BOLI miscalculated the number of supposedly unpaid hours that claimant worked. We affirm.

Petitioner and claimant presented the administrative law judge (ALJ) who presided over the hearing with conflicting accounts of their relationship. The ALJ found neither party to be entirely credible; however, for the most part, he accepted claimant's rendition of events when it conflicted with petitioner's. We recount the facts based on the ALJ's findings, indicating those that are now disputed and accepting those that are not as the facts for purposes of judicial review. *Meltebeke v. Bureau of Labor and Industries*, 322 Or 132, 134, 903 P2d 351 (1995).

Petitioner owned Westside Classic Buicks, a business selling used vehicles in Eugene. In late October 2001, he and claimant agreed that claimant would work selling cars and performing other miscellaneous tasks at petitioner's lot and, by way of compensation, receive $200 per vehicle sold plus additional pay at an undetermined rate. Petitioner and claimant did not discuss the duration of the employment; in the event, claimant worked until some time in April 2002, at which point he quit.

During claimant's employment, he washed and detailed vehicles from petitioner's inventory, sold them, performed some mechanical work, ran errands, answered the phones, sold cell phones (one of petitioner's sidelines), did some work for another of petitioner's businesses, and (pursuant to an agreement with petitioner) displayed and sold some cars and distributed some literature for another business, Peterson Auction Group, a concern owned by claimant's

father. He did not use any of his own equipment, nor did he have any financial investment in Westside Classic Buicks.

Petitioner did not keep any records of claimant's hours on the job. Claimant, however, produced a spiral notebook that he claimed recorded each day's hours, along with a description of the other work that he did. Petitioner contends that the spiral notebook was not a contemporaneous record of hours worked but an after-the-fact fabrication composed at one sitting in contemplation of the hearing and that the number of hours recorded was significantly exaggerated. The ALJ found that the notebook was authentic and contemporaneous but that it recorded hours when claimant was not, in fact, at work—in particular, hours before petitioner's business opened and after it closed.

Before claimant quit, he and petitioner had a conversation about unpaid wages. According to petitioner, claimant agreed to take a 1972 Chevrolet Caprice Classic as payment in full for his labor. Claimant denies that such an agreement occurred. Petitioner attempted to introduce documentary evidence of the car's value, but, because he had not produced it in response to BOLI's discovery request or as part of his case summary, the ALJ sustained BOLI's objection to its admission. Thus, the record contains no definitive evidence of the car's value.

After he left petitioner's employ, claimant filed a wage claim, and assigned it to BOLI. ORS 652.330(1)(b). BOLI notified petitioner of the claim and demanded that he remit a check for $6,773.75, later reduced to $5,670.38. That figure represented the amount that claimant would have received had he been paid minimum wage, minus what he was paid in fact. Petitioner did not respond. BOLI subsequently issued an order of determination alleging that petitioner owed the unpaid wages plus penalty wages and interest. Petitioner filed an answer and requested a hearing. He contended that, although he had paid claimant $2,700, it was not a "wage" because claimant was not an employee and that, in any event, all of petitioner's obligations had been met by giving claimant the Chevrolet. After a hearing, the commissioner ordered petitioner to pay $4,316.75 in unpaid wages,

ORS 652.140(1); $1,560 in penalty wages, ORS 652.150; and $1,560 in civil penalties, ORS 653.055.

■     Petitioner's primary argument on judicial review is that he owes claimant nothing because claimant was not an employee but an independent contractor. *See* ORS 652.310(2) (independent contractor is not employee for purposes of wage claims). Under the undisputed facts, petitioner's argument lacks merit. In deciding whether a worker is or is not an independent contractor, BOLI used, without objection, an "economic reality" test under which it weighs five factors to gauge the degree to which the worker is economically dependent on the business to which he or she renders services. The factors are: (1) the degree of control exercised by the alleged employer; (2) the extent of the investment in the worker and the alleged employer in the business; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanence of the relationship.

In the present case, petitioner exercised control primarily by assigning duties and determining the hours during which his business was open. Claimant had no financial investment in petitioner's enterprise. To the extent that his remuneration derived from commissions, claimant exercised some control over his "profit," but a good deal of his pay came in the form of wages. The bulk of his tasks—ferrying, washing, detailing, and selling used cars—required little if any skill and initiative. When petitioner hired claimant, it was for a nonspecified, indefinite term. Thus, although claimant had some small degree of self-determination—for example, it appears that he could take extended breaks for lunch and personal matters, and attempt to sell his own and his father's vehicles—substantial evidence supports facts from which the commissioner logically concluded that claimant was an employee.

■■     Petitioner also contends that BOLI erred in refusing to allow him "to introduce evidence regarding the trade-in value" of the 1972 Caprice and "refusing to credit" him for the value of that vehicle. However, petitioner would be entitled to apply the value of the car against the amount of wages owed

to claimant only if that deduction was "authorized in writing by the employee, [was] for the employee's benefit, and [was] recorded in the employer's books[.]" ORS 652.610(3)(b). The ALJ concluded, and we agree, that no written authorization exists and that petitioner's books contain no record of a deduction. Thus, even if the ALJ should have admitted the documentary evidence of the Caprice's value, any error in failing to do so would have been harmless. In any event, failing to do so was not error. Petitioner twice failed to respond to prehearing requests to submit documentary evidence, thus giving the ALJ discretion to refuse to admit it at the hearing itself. OAR 839-050-0210(1)(c); OAR 839-050-0210(5).

■     Finally, petitioner assigns error to BOLI's finding that claimant worked 1,079.5 hours. Much of petitioner's argument is directed against claimant's credibility. However, as noted above, the ALJ found claimant to be less than entirely credible and took that judgment into account in deciding how many hours he worked. We find the following excerpt from the ALJ's opinion to be persuasive, and we adopt it:

> "ORS 653.045 requires an employer to keep and maintain proper records of wages, hours and other conditions and practices of employment. * * *
>
> "Where the employer produces no records, the Commissioner may rely on evidence produced by the Agency to show the amount and extent of the employee's work as a matter of just and reasonable inference and then may award damages to the employee, even though the result be only approximate. This forum will accept testimony of a Claimant as sufficient evidence to prove work was performed and from which to draw an inference of the extent of that work—where that testimony is credible. In this case, [petitioner] produced no records and rested its defense on the claim that he never employed Claimant and therefore had no reason to keep records. In contrast, Claimant produced a contemporaneous written record of the dates and hours he purportedly worked. The forum has found those records only partially credible because Claimant, who thought he was working for commission only, did not provide a credible explanation to explain his presence on [petitioner's] lot during hours when [petitioner] was not open for business and Claimant had no opportunity to earn money.

Claimant's claim that he was [petitioner's] general manager, which could have justified the hours claimed, was not credible * * *. However, based on [petitioner's] failure to rebut the dates Claimant claimed to have worked or establish Claimant's absence during [petitioner's] business hours on any specific date, the forum has credited Claimant with having worked during [petitioner's] business hours on all days he claims to have worked. Where Claimant's notes show that he started work later than [petitioner's] opening time, the forum has credited Claimant as having worked the hours between his arrival time and [petitioner's] closing time.

"* * * * *

"[Petitioner] excepted to the forum's failure to take time off Claimant's award of wages based on Claimant's testimony that he took 'long extended leaves from respondent's lot, 2 to 4 hours per day.' This was not Claimant's testimony. Further, the burden was on [petitioner] to produce records or credible testimony to show specific hours that Claimant did not work. [Petitioner] produced neither * * *."

(Citations to BOLI opinions omitted.) The ALJ found claimant's contention that he worked in excess of 1,200 hours not to be credible, finding instead that he worked only when petitioner was open for business, or 1,079.5 hours. That is a reasonable inference to draw from the evidence, particularly in light of the fact that petitioner put on no specific evidence to the contrary. The ALJ's conclusion in favor of claimant and the commissioner's order adopting it were not in error.

Affirmed.