[No. 32667-8-I.    Division One.    January 17, 1995.]

MARLENE HARRIET TIFT, *Appellant*, v. PROFESSIONAL NURSING SERVICES, INC., *Respondent*.

*Scott Jonathan McKay*, for appellant.
*Jean E. Huffington*, for respondent.

SCHOLFIELD, J.* — The Plaintiff, Marlene Tift, appeals the trial court's conclusion of law that her job as a staffing coordinator qualified for the administrative exemption to the Washington Minimum Wage Act (MWA) pursuant to RCW 49.46.010, and therefore, Tift was not entitled to any additional compensation. Tift argues that the hourly overtime component in her compensation precludes it from being a "salary", thus entitling her to overtime compensation. We reverse.

## FACTS[1]

Professional Nursing Services (PNS) is a placement agency providing temporary nurses to health care facilities such as

---

*This opinion was filed after the retirement of Judge Jack P. Scholfield, but it was signed by Judge Scholfield prior to his retirement.

[1]The references to the video record provided to us by the parties are not useful due to inadequate numbering. However, because the parties are not in

hospitals and convalescent homes. Tift worked as a staffing coordinator for PNS from October 1988 until her resignation in February 1991. Tift's primary job as a staffing coordinator was to take the staffing orders of PNS' customers over the telephone and to fill them by dispatching nurses to the appropriate facilities.

Tift's job also required her to be on call to receive telephone calls at home one or two nights per week between midnight and 5 a.m. During those shifts, PNS' phone lines would be transferred to Tift's home telephone number. She would then be required to answer all staffing orders until the morning office staff came on line.

Tift signed an employment contract in February 1989, agreeing to a salary of $634.62 every 2 weeks for hours worked including those over 40 per week, as well as for performing the on-call shifts at home. Those salary payments were gradually increased to $762.62. That amount paid to Tift was fixed, even if she was away from the office during the day on personal errands or doctor appointments.

In addition to her salary, Tift received additional pay at a "straight time" rate prorated from her salary (or rounded up slightly), for all hours worked in the office over 40 hours per week. Tift often worked more than 40 hours per week in the office. She earned approximately $5,000 for this "straight time" over the duration of her employment. In addition, PNS frequently paid Tift incentive bonuses, totaling $3,072.18 during her employment.

PNS had an internal database of employee wage information which it submitted biweekly to a payroll service in order to have payroll prepared. That internal database recorded transactions relating to employee wages, such as shifts worked for hourly employees or advances against wages for salaried employees. The database reflected that throughout Tift's employment PNS never recorded her absences from the office or tracked her hours unless Tift submitted requests for additional pay. Tift conceded that the only time

dispute as to any critical fact, our inability to check the video record is not an impediment to our deciding this case.

her salary was not fully paid to her was when she was sick for an entire week and had no sick leave benefit. Tift never punched a time clock at PNS.

On June 13, 1991, Tift filed a complaint against PNS alleging that it had failed to pay her overtime wages as required under the MWA, RCW 49.46. PNS filed its answer on July 18, 1991, and subsequently raised the defense that Tift was an "administrator" and thus exempt from the MWA's overtime wage provisions.

A bench trial occurred on February 3 and 5, 1993. At the conclusion of PNS' case, Tift moved for directed verdict. The court denied that motion without comment.

On February 9, 1993, the court decided in Tift's favor. In announcing its decision, the court held that PNS had satisfied three of the four elements of WAC 296-128-520(4)(b),[2] including the requirement that Tift be "compensated on salary or fee basis". However, it nonetheless found for Tift on the ground that PNS had not established the third element of WAC 296-128-520(4)(b), namely, that her work "directly related to management policies or general business operations".

On March 5, 1993, the court reconvened. After presenting the findings and judgment to the court, PNS' attorney explained that the parties were pursuing settlement, and therefore, desired to delay formal entry of the judgment and findings unless settlement negotiations came to an impasse. The court approved this request and agreed to defer formal signature and filing unless counsel advised otherwise. In addition, at the request of PNS' attorney, the court noted a motion for reconsideration for March 19, with the understanding that the motion would be stricken if settlement were reached.

---

[2]WAC 296-128-520(4)(b)provides in pertinent part that "an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week (exclusive of board, lodging, or other facilities), and whose primary duty consists of the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers; which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all of the requirements of this section."

Subsequently, the parties failed to settle, and Tift's attorney attempted to have the findings and judgment formally entered. However, because PNS' attorney objected to entry until after her motion for reconsideration had been decided, a telephone conference with the court was held on March 23, 1993. After hearing the arguments of counsel, the court declined to enter the findings or judgment until after it had ruled on PNS' motion for reconsideration.

On March 29, 1993, the trial court filed a written order granting PNS' motion for reconsideration. Based upon that order, new findings of fact and a new judgment were entered.

Tift appeals.

APPLICABILITY OF THE MWA's OVERTIME PROVISIONS

We must decide whether the trial court properly found that PNS compensated Tift on a salary basis, and, if so, whether the trial court then properly concluded that Tift was an administrative employee exempt from the MWA's overtime provisions.

Under the MWA, an employer must generally pay its employees overtime compensation if they work in excess of 40 hours per week. RCW 49.46.130(1). However, an employer does not have to pay overtime compensation to any employee employed in a "bona fide executive, administrative, or professional capacity". RCW 49.46.010(5)(c). That exemption requires that the employee be paid on a salary or fee basis. WAC 296-128-520(4).[3]

Standard of Review. PNS claims that the trial court improperly designated as a legal conclusion its factual finding that PNS compensated Tift on a salary basis and that such incorrect designation does not prevent this court from reviewing that conclusion as a finding of fact. PNS also claims that the determination of whether an employee is paid on a salary basis, for purposes of the exemptions to overtime wage requirements, is a factual finding to which the clearly erroneous test applies.[4]

---

[3]To qualify for the "administrative" exemption to the MWA, an employee must be compensated for his services on a salary or fee basis. WAC 296-128-520(4)(a).

[4]PNS further argues that because the determination of whether Tift was paid on a salary basis was actually a factual finding and not a conclusion of law and

In Washington the court defines the standard of review for the application of MWA exclusions as follows:

> Exclusions pertaining to MWA coverage should be construed strictly in favor of the employees so as not to defeat the broad objectives for which the act was passed. Employers asserting an exclusion have the burden of proving their employees fit plainly and unmistakably within its terms. Whether an exception applies in a particular case should be reviewed pursuant to the "clearly erroneous" standard.
>
> A finding is "clearly erroneous" when, although there is evidence supporting the court's finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

(Citations omitted.) *Goff v. Airway Heights*, 46 Wn. App. 163, 166, 730 P.2d 691 (1986), *rev'd on other grounds sub nom. Chelan Cy. Deputy Sheriffs' Ass'n v. Chelan Cy.*, 109 Wn.2d 282, 745 P.2d 1 (1987).

The ultimate finding as to employee status is not simply a factual inference drawn from historical facts, but more accurately, is a legal conclusion based on factual inferences drawn from historical facts. The federal court thus has held repeatedly that the ultimate determination of employee status is a conclusion of law subject to de novo considerations by that court. *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1045 (5th Cir.), *cert. denied*, 484 U.S. 924 (1987). A court's factual findings regarding employee status are subject to the clearly erroneous standard of review, while the application of the exemption to the facts is subject to de novo review. *Worthington v. Icicle Seafoods, Inc.*, 774 F.2d 349, 352 (9th Cir. 1984), *vacated and remanded*, 475 U.S. 709, 89 L. Ed. 2d 739, 106 S. Ct. 1527, *rev'd on remand*, 791 F.2d 802 (1986).

Accordingly, we shall review the trial court's conclusion of law regarding whether Tift was salaried as a finding of fact by applying the clearly erroneous standard. We shall then

because Tift accepted all factual findings in her brief, it follows that the finding that Tift was paid on a salary basis was also accepted by Tift. Such is not the case. Tift accepted only those findings designated as such, not those findings PNS claims were erroneously labeled as conclusions of law. There is no indication that Tift intended to accept the court's conclusion that she was paid by salary.

review de novo the trial court's ultimate determination of whether Tift was salaried. In reviewing an issue de novo, the reviewing court determines the correct law and applies it to the facts as found below. *See Sauter v. Mount Vernon Sch. Dist. 320*, 58 Wn. App. 121, 128, 791 P.2d 549 (1990).

Salary Basis. The central and dispositive question in this case is whether an employee can receive hourly overtime payments in excess of a minimum weekly predetermined amount, and still be paid "on a salary basis" and not on an hourly basis. PNS argues that an employer may pay exempt employees additional compensation along with a predetermined amount each pay period without automatically destroying the employees' salaried status.

██ No Washington authority has defined the "salary basis" element of the administrative employee exemption to the MWA. Because the MWA is based upon the Federal Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.*,[5] federal cases and interpretations are deemed to be persuasive but not controlling upon Washington courts. *See Chelan Cy.*, 109 Wn.2d at 291; *Weeks v. Chief of Wash. State Patrol*, 96 Wn.2d 893, 897, 639 P.2d 732 (1982). *See also Xieng v. Peoples Nat'l Bank*, 120 Wn.2d 512, 531, 844 P.2d 389 (1993) (in the absence of adequate state authority, federal authority is persuasive).[6]

Circuit courts are split on the hourly overtime issue. The Ninth Circuit has stated that overtime pay is generally inconsistent with a salaried status. *Abshire v. County of Kern*, 908 F.2d 483, 486 (9th Cir. 1990), *cert. denied*, 498 U.S. 1068 (1991). But other courts have upheld overtime compensation for salaried employees in particular situations. *See Pautlitz v. Naperville*, 781 F. Supp. 1368, 1371 (N.D. Ill. 1992) (treating overtime pay as a "bonus scheme" does not defeat salar-

---

[5]*Goff*, at 166.

[6]PNS cites 29 C.F.R. § 541.118(a), which defines payment on a salary basis, and 29 C.F.R. § 541.118(b), which defines circumstances when an employer may pay an exempt employee additional compensation without automatically losing the employee's salaried status. However, while the Code of Federal Regulations can be helpful and persuasive, it is not binding on us.

ied status); *York v. Wichita Falls, Tex.*, 944 F.2d 236, 242 (5th Cir. 1991) ("[p]aying an hourly rate for each hour worked beyond the regular schedule does not defeat the executive exemption"); *Hartman v. Arlington Cy., Va.*, 720 F. Supp. 1227, 1229 (E.D. Va. 1989) (overtime compensation calculated on an hourly basis is "expressly permitted by § 541.118(b) and does not defeat the executive exemption"), *aff'd*, 903 F.2d 290 (4th Cir. 1990). However, employees are not paid on a salary basis if the predetermined amount is so far below their actual compensation (calculated on an hourly basis) that the minimum is " 'nothing more than an illusion.' " *Brock v. Claridge Hotel & Casino*, 846 F.2d 180, 187 (3d Cir.), *cert. denied sub nom. Claridge Hotel & Casino v. McLaughlin*, 488 U.S. 925 (1988). Extra compensation defeats salaried status when employers use it to circumvent the regulatory requirements. *Hilbert v. District of Columbia*, 23 F.3d 429, 432 (D.C. Cir. 1994).

In *Hilbert*, police captains and lieutenants brought an action for a judgment declaring that they were entitled to overtime pay under the FLSA, 29 U.S.C. § 207(a). *Hilbert*, at 430. The District Court rejected the District of Columbia's argument that the officers were exempt from the FLSA's overtime requirements as " 'executive, administrative, or professional' " employees, and thus granted the plaintiff's motion for summary judgment. *Hilbert*, at 430. The District Court based its judgment on the theory that no one who receives hourly overtime is paid " 'on a salary basis' ". *Hilbert*, at 431. The Court of Appeals reversed in part, holding that for the period subsequent to September 6, 1991, when the Department of Labor adopted a rule superseding the no-docking rule,[7] police captains and lieutenants were exempt from the overtime provisions of the FLSA. *Hilbert*, at 431.

In his dissenting opinion in *Hilbert*, Judge Mikva points out that a salaried employee can be paid a bonus

---

[7]The no-docking rule provided that employees were not considered salaried if their pay was subject to reduction for absences of less than a day. This rule had applied ever since the first regulatory definition of payment "on a salary basis". *Hilbert*, at 431 (citing 19 Fed. Reg. 4405-06 (July 17, 1954)).

when he performs a task for which he has been paid a salary, but performs it in a manner exceeding normal expectations. In that case, he is paid a bonus for hard work or exceptional results. However, when the bonus becomes a contractual entitlement and is measured by the hour, the employee, according to Judge Mikva, is no longer paid on a salary basis. Hourly overtime is purely an incentive to work more hours, not to do a better job. *Hilbert,* at 440 (Mikva, C.J., concurring in the result in part, dissenting in part). Judge Mikva further states at pages 440-41 that

> [hourly overtime] denotes that payment for regular time is also measured by the hour — even if the latter is paid in weekly installments — because an employer cannot measure overtime on an hourly basis unless he expects a certain number of hours from his employee in the first instance. In this case, the plaintiffs are expected to work forty hours a week. If they work more hours, they receive overtime pay by the hour. This is employment on an hourly basis. The fact that the District pays it out in the form of a weekly "salary" does not change the fact that this "salary" is determined solely by reference to the number of hours worked. And when an employee's compensation depends on the hours she puts in, she is paid on an hourly basis — even if she receives a guaranteed minimum weekly wage.

We are persuaded by the logic of Judge Mikva's dissenting opinion in *Hilbert* and find that it applies to the facts of this case. Under Tift's employment agreement, she regularly received on a biweekly basis a predetermined amount which in some weeks constituted part of her compensation, and in other weeks, all of it. She received this amount regardless of the quality or quantity of work performed and regardless of whether she was absent from work for personal errands or doctor appointments. PNS only required that Tift record her hours worked in excess of 40 hours per week. PNS did not monitor Tift's hours. The only deduction from salary occurred when Tift missed an entire week for illness.

Following the reasoning of Judge Mikva's dissenting opinion, we find that Tift's compensation was fundamentally on an hourly basis. While she was paid a fixed salary every 2 weeks, the theory behind that fixed salary was that she was working 40 hours per week. This is demonstrated by the

586

required recordkeeping reflecting any hours she worked over 40 hours and then compensating her on an hourly basis for all work done in excess of 40 hours. This results in a system whereby the employee is in reality an hourly employee. Thus, we conclude that the trial court's finding that Tift was a salaried employee, based on the record, was clearly erroneous. Additionally, we find reversible error in the trial court's ultimate conclusion that Tift was an administrative employee exempt from the MWA's overtime provisions.

Plaintiff is awarded attorney fees, pursuant to RCW 49.48.030, in an amount to be determined by a commissioner of this court.

The judgment is reversed.

BAKER, A.C.J., and BECKER, J., concur.

After modification, further reconsideration denied March 1, 1995.

Review denied at 127 Wn.2d 1007 (1995).