[No. 55834-0-I. Division One. August 28, 2006.]

NORM MITCHELL, *Individually and on Behalf of All Others Similarly Situated, Appellant,* v. PEMCO MUTUAL INSURANCE COMPANY ET AL., *Respondents.*

*Simon H. Forgette* (*Mark E. Griffin* of *Griffin McCandlish* and *William D. Brandt*, of counsel), for appellant.

*Harry J.F. Korrell III*, *Michael Reiss*, and *Eric B. Martin* (of *Davis Wright Tremaine, L.L.P.*), for respondents.

¶1 COLEMAN, J. — Norm Mitchell is the representative in this class-action suit against his employer, PEMCO Mutual

Insurance Company. Mitchell alleged that the three categories of claims adjusters in the class were improperly classified as administrative employees exempt from overtime pay. PEMCO conceded that one type of adjuster was not exempt, and the court found that the other adjusters—casualty and property adjusters—in the class were properly classified as exempt. Because substantial evidence supports the court's finding that casualty and property adjusters are exempt, we affirm.

## FACTS

¶2 Mitchell represents a class including three types of PEMCO claims adjusters: casualty adjusters, property adjusters, and auto physical damage (APD) adjusters. Before 2001, PEMCO treated all three types of adjusters as exempt from overtime pay under the administrative exception to the Washington Minimum Wage Act (MWA), RCW 49-.46.010. In 2001, the California Court of Appeals concluded in *Bell v. Farmers Insurance Exchange*, 87 Cal. App. 4th 805, 105 Cal. Rptr. 2d 59 (2001), that all categories of Farmers' personal lines adjusters were entitled to overtime. After this case was decided, PEMCO evaluated the exempt status of its own adjusters. PEMCO reclassified APD adjusters as nonexempt, but casualty and property adjusters remained exempt.

¶3 On March 4, 2002, APD adjuster Alan Frye filed a class-action complaint against PEMCO, alleging identical claims as those made in this case. Before the class was certified, Frye settled the case individually and his suit was dismissed. Before he settled, however, Frye filed a motion to permit intervention by Mitchell as the class representative. The trial court denied the motion without prejudice.

¶4 Mitchell filed his own complaint on January 9, 2003, with the same class definition and time period as was used in Frye's complaint. In October 2003, the trial court granted Mitchell's motion for class certification, which defined the class as all APD, casualty, and property adjusters employed

as of March 4, 1999 (three years prior to the date Frye filed suit). In November 2003, the court granted PEMCO's motion to redefine the start of the class period from March 4, 1999 to January 9, 2000.

¶5 The suit proceeded to trial in November 2004. The trial consisted of two phases. In the first phase, the court determined the issue of PEMCO's liability for overtime. In the second phase, the court determined whether the adjusters were entitled to double damages for PEMCO's willfulness in failing to pay overtime. (A third phase, to determine the amount of damages, has not yet occurred.)

¶6 Before the first phase, PEMCO stipulated to Mitchell's case in chief and conceded that its failure to pay overtime to class members was not the result of carelessness and inadvertence. PEMCO also withdrew its affirmative defense that APD adjusters were exempt employees.

¶7 After a bench trial, the court found that APD adjusters were not exempt and, thus, were entitled to double the amount of overtime pay they were legally entitled to but found that casualty and property adjusters were exempt because they were employed in a bona fide administrative capacity. Mitchell appeals the judgment in favor of PEMCO as to the casualty and property adjusters and also appeals the court's clarification of the starting date of the class period.

## ANALYSIS

### Burden of Proof

¶8 The trial court found that PEMCO had proved by a preponderance of the evidence that the adjusters fit within the administrative exemption. Mitchell argues that case law has established that employers asserting an employee is exempt must prove that the employee fits within the terms of the exemption "plainly and unmistakably"—a higher burden of proof than preponderance of the evidence. PEMCO argues that no case law establishes a "plainly and

unmistakably" burden and, thus, the typical preponderance standard was properly applied.

¶9 The MWA requires employers to pay overtime wages to employees who work more than 40 hours per week unless the employees work in a "bona fide executive, administrative, or professional capacity." RCW 49.46.010(5)(c). Such exempt employees must be paid on a salary or fee basis. WAC 296-128-520(4). Courts review the applicability of an MWA exemption under a "clearly erroneous" standard:

> "Exclusions pertaining to MWA coverage should be construed strictly in favor of the employees so as not to defeat the broad objectives for which the act was passed. Employers asserting an exclusion have the burden of proving their employees fit plainly and unmistakably within its terms. Whether an exception applies in a particular case should be reviewed pursuant to the clearly erroneous standard.
>
> "A finding is clearly erroneous when, although there is evidence supporting the court's finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*Tift v. Prof'l Nursing Servs., Inc.*, 76 Wn. App. 577, 582, 886 P.2d 1158 (1995) (internal quotation marks omitted) (quoting *Goff v. City of Airway Heights*, 46 Wn. App. 163, 166, 730 P.2d 691 (1986), *rev'd on other grounds sub nom. Chelan County Deputy Sheriffs' Ass'n v. County of Chelan*, 109 Wn.2d 282, 745 P.2d 1 (1987)).

¶10 Mitchell argues that this quotation establishes that an employer asserting an MWA exemption—such as PEMCO— is held to a "plain and unmistakable" burden of proof. Neither *Tift* nor any subsequent case, however, holds an employer to an elevated burden of proof. *Tift* explains the process by which a trial court determines whether an employee is exempt from the MWA: "The ultimate finding as to employee status is not simply a factual inference drawn from historical facts, but more accurately, is a legal conclusion based on factual inferences drawn from historical facts." *Tift*, 76 Wn. App. at 582. Here, the trial court determined the facts related to the casualty and property

adjusters' jobs by the standard burden of proof—a preponderance of the evidence. Having made those determinations, the court then concluded that the adjusters plainly and unmistakably fit the administrative exemption. This approach is consistent with *Tift*, and we therefore conclude that the trial court applied the correct burden of proof.

### Exemption Status of Casualty and Property Adjusters

■ ¶11 Mitchell argues that regardless of the burden of proof applied, the trial court erred in concluding that PEMCO met its burden to prove that its casualty and property adjusters were exempt. This court reviews de novo the trial court's conclusion of law that the adjusters were exempt and applies a "clearly erroneous" standard of review to the trial court's findings of fact as to employee status. *See Tift*, 76 Wn. App. at 582.

■ ■ ¶12 There are two tests that an employee must meet to be exempt from the MWA's overtime provisions as an administrative employee: the duties test and the salary basis test. *Webster v. Pub. Sch. Employees of Wash., Inc.*, 148 Wn.2d 383, 386, 60 P.3d 1183 (2003). "When construing provisions of the Washington Minimum Wage Act, this Court may consider interpretations of comparable provisions of the Fair Labor Standards Act of 1938 [29 U.S.C. §§ 201-219] as persuasive authority." *Inniss v. Tandy Corp.*, 141 Wn.2d 517, 524, 7 P.3d 807 (2000).[1]

### A. *Duties Test*

■ ¶13 Washington's MWA regulations and the federal Department of Labor (DOL) regulations[2] set out a multifactored definition of the duties of exempt administra-

---

[1] At the time of the trial, the parties referred to two tests to determine whether an employee is an administrative employee under the Fair Labor Standards Act: the "long test" and the "short test." *See* former 29 C.F.R. § 541.2(a)-(e) (1975) ("long test"); former 29 C.F.R. §§ 541.2(e)(2) and .214 (1975) ("short test"). The parties agreed that the "short test" applied here. In 2004, the two tests were streamlined into one test. *See* 29 C.F.R. § 541.200. The factors discussed below relate to both the "short test" and the newer test in 29 C.F.R. § 541.200.

[2] This opinion refers to the current version of the DOL regulations as persuasive authority. The older Code of Federal Regulations sections referred to at trial were

tive employees, and the parties here dispute the applicability of two of these factors. Employees can be defined as administrative if: first, their "primary duty consists of the performance of office or non-manual field work directly related to management policies or general business operations of his employer or his employer's customers," and second, they "customarily and regularly exercise discretion and independent judgment." WAC 296-128-520(1), (3); *see also* 29 C.F.R. § 541.200. We discuss these two factors below.

### 1. Work Directly Related to PEMCO's General Business Operations

¶14 Mitchell does not dispute that casualty and property adjusters perform office work but argues that the adjusters' work is not directly related to the management policies or general business operations of PEMCO or PEMCO's customers. Mitchell claims that PEMCO's general business is to write and sell insurance policies and that the adjusters' work—which is servicing, not writing or selling policies—does not therefore relate to PEMCO's general business operations.

¶15 The DOL regulations explain the meaning of this exemption factor, specifically that the

> phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.

29 C.F.R. § 541.201(a).

¶16 The casualty and property adjusters who testified at trial described job duties that fit within the administrative exemption as explained by the DOL regulations. Although the adjusters worked only in the claims department of

---

substantially similar to the newer streamlined regulations, and our analysis under either version of the code would be the same.

PEMCO, the adjusters serviced PEMCO's policyholders and claimants, representing the company and negotiating settlements. The adjusters also executed or carried out PEMCO's policies regarding the handling of claims, and the adjusters testified extensively to the variety of policies that they carried out regularly. Furthermore, a DOL regulation—not binding authority but certainly persuasive here—lists insurance claims adjusters as an example of a job that typically meets the duties requirement for the administrative exemption:

> Insurance claims adjusters generally meet the duties requirements for the administrative exemption, whether they work for an insurance company or other type of company, if their duties include activities such as interviewing insureds, witnesses and physicians; inspecting property damage; reviewing factual information to prepare damage estimates; evaluating and making recommendations regarding coverage of claims; determining liability and total value of a claim; negotiating settlements; and making recommendations regarding litigation.

29 C.F.R. § 541.203(a). PEMCO's casualty and property adjusters testified to performing all of the job duties listed here. We conclude that the duties performed by PEMCO's casualty and property claims adjusters are related to PEMCO's general business operations and, therefore, the trial court did not err in finding that the first element of the short test was met.

### 2. Discretion and Independent Judgment

¶17 Mitchell argues that while casualty and property adjusters, like all types of employees, must exercise some degree of independent judgment in performing their jobs, they do not exercise discretion or independent judgment in matters that affect PEMCO's general business operations.

¶18 The Washington Administrative Code section stating the discretion and independent judgment requirement in the duties test has not been interpreted by Washington cases or regulations, but regulations relating to the corresponding federal law provide guidance:

In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.

. . . .

(c) The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision. However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level.

29 C.F.R. § 541.202(a), (c).

¶19 The adjusters' trial testimony described many instances where they use discretion and independent judgment. They are often the primary point of contact for PEMCO policyholders and service the claimants by evaluating claims, offering initial payments to help claimants suffering a loss, arranging alternate housing or transportation, hiring experts, and negotiating and settling claims—typically without direction or supervision. Although more costly claims may be reviewed by supervisors, the discretion and independent judgment exercised by adjusters is not destroyed. We conclude that the adjusters do exercise discretion and independent judgment and, therefore, the trial court did not err in finding that this element of the short test had been met.

## B. *Salary Basis Test*

¶20 Mitchell argues that casualty and property adjusters are not salaried employees because they are subject to wage deductions inconsistent with salaried employment. PEMCO asserts that although adjusters were subject to full-day deductions, such deductions were not inconsistent with salaried employment and, therefore, adjusters are salaried.

¶21 In addition to satisfying the duties test, an administrative employee must be paid on a "salary or fee basis" to be exempt from the MWA. WAC 296-128-530(5). Neither the

MWA nor the WAC defines "salary or fee basis," but Washington has adopted, in part, a DOL regulation that defines "salary basis":

> "An employee will be considered to be paid 'on a salary basis' . . . if . . . he regularly receives each pay period . . . a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. . . . [T]he employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work."

*Drinkwitz v. Alliant Techsystems, Inc.*, 140 Wn.2d 291, 299, 996 P.2d 582 (2000) (quoting former 29 C.F.R. § 541.118(a) (1975)). The *Drinkwitz* court stated that "[m]aking deductions in pay when employees fail to meet a weekly hours quota is inconsistent with salaried employment." *Drinkwitz*, 140 Wn.2d at 304. In *Clawson v. Grays Harbor College District No. 2*, 148 Wn.2d 528, 539, 61 P.3d 1130 (2003), the court noted that in certain circumstances, however, deductions are not inconsistent with salaried employment,

> including when the employee has performed no work in a week or is absent for a full day for personal reasons other than illness or an accident; when the employee is absent for a full day or more and is ineligible to participate in a bona fide plan, policy, or practice of providing compensation for loss of salary due to sickness and disability or has exhausted all accrued leave allowed under the plan; or the employee has violated a safety rule of major significance.

*Clawson*, 148 Wn.2d at 542 n.47.

¶22 Mitchell supports his argument that PEMCO adjusters are not salaried with testimony from the PEMCO's payroll supervisor that PEMCO had a policy of taking deductions from the pay of adjusters who missed work after exhausting accrued leave. Even if this policy were put into action (which PEMCO disputes, other than in an isolated

incident), it would not conflict with *Clawson* because deductions for absences after exhaustion of accrued leave is one of the circumstances where deductions are proper and consistent with salaried employment. The type of deduction found in *Drinkwitz*, where deductions were taken when employees were deficient in making hourly quotas, was not being made here. We therefore conclude that the trial court did not err in finding that PEMCO casualty and property adjusters were salaried employees.

¶23 Thus, because the court did not err in finding that the job performed by the casualty and property adjusters met both parts of the duties test and the salary basis test, we conclude that the trial court did not err in concluding that the adjusters were exempt from the overtime provisions of the MWA.

### Relevancy of Reclassification of APD Adjusters

¶24 Mitchell argues that the trial court erred in refusing to consider that PEMCO had reclassified APD adjusters as nonexempt because it was relevant to the classification of the other adjusters due to the similarities in their jobs. PEMCO argues that the reclassification of APD adjusters was irrelevant to the status of the other adjusters because the change was based on differences between the duties of APD adjusters and other adjusters.

¶25 A trial court's determination of the relevance of evidence is reviewed for abuse of discretion. *Bell v. State*, 147 Wn.2d 166, 181-82, 52 P.3d 503 (2002). Only relevant evidence is admissible. ER 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401.

¶26 Although PEMCO had reclassified its APD adjusters before trial, the trial court was faced with the issue of the classification of the casualty and property adjusters. Contrary to Mitchell's argument, PEMCO's reclassification of APD adjusters does not amount to an admission that they

had been wrongly classified before. The decision was made after a review of the job duties of APD adjusters, and APD adjusters were reclassified as nonexempt due in part to the increased computerization of the car repair estimation process. And while it is true that APD, casualty, and property adjusters are all claims adjusters, the job duties are different depending on the type of claims. The fact that PEMCO had reclassified its APD adjusters, who have different job duties than the casualty and property adjusters, then would not have aided the trial court in determining whether the job duties of casualty and property adjusters amounted to exempt administrative work. We conclude that the trial court did not abuse its discretion in refusing to consider the reclassification of PEMCO's APD adjusters.

Class Clarification

 ¶27 Wage and hour claims have a three-year statute of limitations in Washington. RCW 4.16.130; *Seattle Prof'l Eng'g Employees Ass'n v. Boeing Co.*, 139 Wn.2d 824, 1 P.3d 578 (2000). Because Mitchell's motion to intervene in a case that had been originally filed on March 4, 2002 was dismissed without prejudice, Mitchell argues that his subsequent complaint related back to the original filing date and, therefore, the trial court's order clarifying the class was in error. PEMCO argues that Mitchell filed his own lawsuit—a separate case from the previous one—on January 9, 2003 and, thus, the appropriate statutory period in this case can only run from January 9, 2000.

¶28 Mitchell relies on *State v. Klinker*, 85 Wn.2d 509, 537 P.2d 268 (1975), for the proposition that dismissal of a motion without prejudice means that a subsequent filing relates back to the original filing date. But in *Klinker*, the Washington Supreme Court ordered that a judgment should be modified to dismiss an action—because the statutes on which it was based were unconstitutional—against a defendant without prejudice to the State's right to amend its complaint, and went on to state in a footnote that the State's amended complaint would relate back to its original filing

date, thus tolling the statute of limitations. *Klinker*, 85 Wn.2d at 524 n.8. The court stated that it would be inequitable to run the statute of limitations while there was no constitutional procedure by which the State could have brought an action against the defendant. *Klinker*, 85 Wn.2d at 524 n.8.

¶29 Here, Mitchell's motion to intervene in Frye's suit was dismissed without prejudice, and although the dismissal without prejudice would have permitted Mitchell to move to intervene again, Mitchell subsequently brought his own class-action lawsuit. And although Mitchell was a member of the class contemplated in Frye's action, Mitchell's own case was not a continuation of Frye's action, but a separate action brought after Frye settled and his case was dismissed. This case is therefore distinguishable from *Klinker*—in that case, the State was permitted to amend an already-existing complaint, but here, Mitchell filed a new, separate lawsuit after Frye's action was dismissed. Thus, the statute of limitations that should apply to Mitchell's action runs from three years before the filing of his own lawsuit. We conclude that the trial court did not err in clarifying the class to reflect this result.

## Double Damages and Attorney Fees

¶30 Mitchell argues that because PEMCO knowingly refused to pay overtime to the adjusters, who should be considered nonexempt, the adjusters should be awarded double damages under RCW 49.52.070 and attorney fees at trial and on appeal under RCW 49.48.030. But because we affirm the trial court's conclusion that the adjusters are exempt, we do not award double damages or attorney fees at trial or on appeal.

¶31 For the foregoing reasons, we affirm.

APPELWICK, C.J., and GROSSE, J., concur.

Review denied at 160 Wn.2d 1016 (2007).