# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CURTIS JOHNSON, an individual,<br><br>Appellant,<br><br>v.<br><br>SILVER SHORES MHP, LLC, a Washington limited liability company, UBI No. 603 232 542; and DAVID ROBERT FRITSCHI, JR.,<br><br>Respondents. | No. 82133-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

APPELWICK, J. — Johnson entered into a written employment agreement to serve as the onsite property manager for Silver Shores Mobile Home Park. After he was terminated from the position, Johnson brought a wage claim under the Washington Minimum Wage Act (MWA).[1] He also alleged retaliatory discharge based on his expressed intention to enforce his rights under the MWA. The trial court dismissed these claims on summary judgment. We conclude that Johnson was exempt from the MWA because his job required that he reside on the premises and affirm summary judgment on the MWA claim. But, we reverse on the retaliation, unpaid services, unjust enrichment, and quantum meruit claims, because genuine issues of material fact preclude summary judgment.

---

[1] Chapter 49.46 RCW.

FACTS

Silver Shores MHP LLC, owned by David Fritschi, Jr., is a mobile home park for senior residents. In December 2015, Silver Shores hired Curtis Johnson to serve as its residential property manager. Johnson signed an employment contract that contained an arbitration clause with a one year time limitation:

> The parties agree that except for legal proceedings in which the courts or an administrative agency have exclusive jurisdiction, and unless arbitration is prohibited by the circumstances, Employee and Employer agree that arbitration shall be the exclusive means of resolving any dispute arising out of Employee's termination and that no other action shall be brought by Employee in any court or other forum. THIS AGREEMENT IS A WAIVER OF ALL RIGHTS TO A CIVIL COURT ACTION FOR A DISPUTED TERMIATION. ONLY THE ARBITRATOR, NOT A JUDGE OR JURY, WILL DECIDE THE DISPUTE. . . .
>
> If Employee decides to dispute Employer's termination, or to make a claim for monetary damages arising out of his/her employment with Employer or the termination of such employment, Employee agrees to deliver a written request for arbitration of the foregoing to Employer within one (1) year following the last day of Employee's employment by Employer . . . . If Employer does not receive a written request for arbitration from Employee within one (1) year from the last date of Employee's employment with Employer . . . . Employee agrees Employee shall have waived any right to raise claims arising out of the employment, or the termination of Employee's employment with Employer.

Johnson separately signed these specific provisions of the employment contract in two locations. The contract also provided: "Employee's Job responsibilities shall be established from time-to-time as determined by Employer. No modification or change of Employee's position, responsibilities, duties, compensation, benefits, and/or Job description shall otherwise modify, change, or revoke any other provisions of this Employment Agreement."

2

Johnson began working for Silver Shores on January 1, 2016. The terms of Johnson's employment required him to live onsite, and Silver Shores provided a mobile home and paid utilities. Because the manager's unit needed repairs, Johnson lived off premises until March 2016. In addition to his role as manager, Johnson began performing work previously done by others, including yard service, maintenance work, and administrative work.

According to Johnson, Silver Shores agreed to pay him to perform the additional services. Johnson claims Silver Shores then withheld a substantial portion of his wages for these additional services by failing to pay as promised. Beginning in October or November 2016, Johnson says he began complaining about the lack of payment without success. Johnson claims he informed Silver Shores' attorney that he intended to seek legal counsel and file suit for unpaid wages in early March 2018. Silver Shores has no record of this communication.

Johnson lived on premises until shortly after his termination on March 28, 2018. According to Fritschi, Silver Shores terminated Johnson because he "used a loud and inappropriate tone with me over the phone about some minor issue at the Park." Fritschi also became aware of Johnson's "episodes of profanity and improper treatment of another employee." And, Johnson failed to respond to phone calls from Fritschi.

Silver Shores received an e-mailed list of demands, without a request for arbitration, from Johnson on March 6, 2019. Silver Shores responded with a settlement proposal on March 18, 2019. The response referenced the contractual

requirement that arbitration must be requested within one year of termination, but it extended the deadline to May 1, 2019 in light of the looming deadline and pending settlement offer. Silver Shores also sent the offer to Johnson's newly retained counsel. The settlement offer was rejected by a counteroffer. On June 18, 2019, Johnson filed a lawsuit alleging violation of the MWA by willful refusal to pay wages, retaliation, unjust enrichment, and quantum meruit.

Silver Shores moved for summary judgment on the grounds that Johnson failed to request arbitration within one year. Silver Shores also argued Johnson was not entitled to overtime wages because the job required he live onsite, and he could not show that retaliation motivated his termination. After oral argument, the trial court agreed in all respects and granted summary judgment for Silver Shores. Johnson appeals.

## DISCUSSION

Johnson appeals the trial court's decision on summary judgment. We review orders on summary judgment de novo. Kim v. Lakeside Adult Family Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR 56(c)). We consider the evidence and reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. Kim, 185 Wn.2d at 547.

4

To defeat summary judgment, the opposing party must set forth specific facts showing a genuine issue of material fact and may not rely on allegations or self-serving statements. Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Grp., Inc., 114 Wn. App. 151, 157, 52 P.3d 30 (2002). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to his case," then the trial court should grant summary judgment. Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co., 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

I.    Minimum Wage Act Exemption

Silver Shores argued, and the trial court agreed, that Johnson was exempt from overtime under the MWA because his employment required that he reside on the mobile home park's premises. On appeal, Johnson contends that the exemption does not apply because the nature of his duties did not require him to live onsite.

The MWA generally requires employers to pay a minimum wage and overtime wages to employees who work more than 40 hours per week. RCW 49.46.020(2); Mitchell v. PEMCO Mut. Ins. Co., 134 Wn. App. 723, 730, 142 P.3d 623 (2006). An employee "includes any individual employed by an employer" with certain exemptions. RCW 49.46.010(3). One exemption applies to "[a]ny individual whose duties require that he or she reside or sleep at the place of his or her employment or who otherwise spends a substantial portion of his or her work time subject to call, and not engaged in the performance of active duties." RCW

49.46.010(3)(j). The employer bears the burden of proving exempt status. Drinkwitz v. Alliant Techsystems, Inc., 140 Wn.2d 291, 301, 996 P.2d 582 (2000). As a remedial statute, the MWA is given liberal construction, and "exemptions from its coverage 'are narrowly construed and applied only to situations which are plainly and unmistakably consistent with the terms and spirit of the legislation.'" Anfinson v. FedEx Ground Package Sys., Inc., 174 Wn.2d 851, 870, 281 P.3d 289 (2012) (quoting Drinkwitz, 140 Wn.2d at 301).

Silver Shores argues Johnson was exempt from the MWA under RCW 49.46.010(3)(j) because his duties required that he reside at the motor home park. Whether the RCW 49.46.010(3)(j) "exclusion applies is a question of worker categorization rather than the compensability of any given hour in a worker's day." Berrocal v. Fernandez, 155 Wn.2d 585, 597, 121 P.3d 82 (2005). The court must inquire whether the worker falls into a class that resides or sleeps at the place of employment. Id. "[T]he MWA exclusions were meant to apply to broad categories of workers based on the type of employment and not on the activity in which an employee is momentarily engaged. To hold otherwise, would create myriad accounting and other practical difficulties." Teamsters Local Union No. 117 v. Dept. of Corr., 145 Wn. App. 507, 516, 187 P.3d 754 (2008).

Johnson does not dispute that, except for the first few weeks when the manager's unit was under repair, he lived onsite. Instead, Johnson argues he is not exempt because the job duties did not require him to live on the premises. Johnson contends that while the manager's unit underwent renovations, he

6

performed his duties and could be on site in three to five minutes in case of an emergency. He noted that he performed 99 percent of his duties between 7 a.m. and 7 p.m. and Fritschi had verbally instructed him to avoid taking work calls after hours. Johnson estimated that he was required to address an after-hours emergency situation "no more than 15 times total" during the approximately 27 months he worked for Silver Shores. According to Johnson, his presence was unnecessary because if a problem could not wait until morning, it "could certainly wait the few minutes it would take for me to call a contractor to solve the problem, which I could have done from hundreds of miles away, or if necessary, for me to take the three to five minutes it might take to drive to the premises."

Johnson's claims are the type of activity-specific analysis rejected by Berrocal and Teamsters. In determining whether the MWA exemption applies, we look to the broad category of workers. See Teamsters, 145 Wn. App. at 516. Here, the broad category is determined by the employment contract that describes the nature of the position as requiring the manager to live onsite.

> The position of Community Manager is a salaried position, not hourly, and requires the Employee to reside at the Park and staff the Park's Office which is currently within the Community Manager's dwelling and may be relocated in full or part to some other locations within the Park at Employer's direction and discretion. It is expected that the Employee, as Community Manager, will not actively work more than 20 hours during a given week without expressed direction or instruction by Employer or employer's agent, but Employee shall be subject to and be "on call" for inquiries and reports from tenants, Employer, government officials, and other persons about business, activities, or conditions in the Park at all times, 24/7.

7

The contractual duties specify the manager be available 24/7 to respond to any needs in the park. To this end, compensation included housing and paid utilities for the community manager's unit within the park.

Johnson's belief that he could perform the job while living offsite does not defeat the language of the contract that articulated the job requirements and established the role as a residential manager. As a result, RCW 49.46.010(3)(j) applies to Johnson for his work under the terms of the employment agreement and exempts him from the requirements of the MWA. The trial court properly granted Silver Shores' motion for summary judgment on the MWA overtime claim.

## II. Retaliation

Johnson claims Silver Shores terminated his employment in retaliation for his attempt to enforce his rights under the MWA. Johnson raised his retaliation claim under RCW 49.46.100, which establishes that "[a]ny employer who discharges or in any other manner discriminates against any employee because such employee has made any complaint to his or her employer, to the director, or his or her authorized representatives that he or she has not been paid wages in accordance with" the MWA is guilty of a gross misdemeanor. Courts "have held employers who engage in such retaliation liable in tort for violation of public policy."[2] Hume v. Am. Disposal Co., 124 Wn.2d 656, 662, 880 P.2d 988 (1994).

---

[2] Despite bringing the claim under the MWA specific provision, both Johnson and Silver Shores apply the burden shifting analysis of the Washington Law Against Discrimination (WLAD), ch. 49.60 RCW, retaliation claim to the facts of this case. WLAD does not apply to retaliation based on MWA claims.

Wrongful discharge in violation of public policy is a narrow exception to the at-will employment doctrine. Sedlacek v. Hillis, 145 Wn.2d 379, 385, 36 P.3d 1014 (2001). The reason for labeling a discharge as "wrongful" "arises out of the employer's duty to conduct its affairs in compliance with public policy." Smith v. Bates Tech. Coll., 139 Wn.2d 793, 804, 991 P.2d 1135 (2000). The tort of wrongful discharge in violation of public policy is generally limited to four scenarios: (1) where employees are fired for refusing to commit an illegal act; (2) where employees are fired for performing a public duty or obligation; (3) where employees are fired for exercising a legal right; and (4) where employees are fired for whistleblowing. Martin v. Gonzaga Univ., 191 Wn.2d 712, 723, 425 P.3d 837 (2018). To establish wrongful discharge in violation of public policy for these scenarios, a plaintiff must show that the "discharge may have been motivated by reasons that contravene a clear mandate of public policy." Thompson v. St. Regis Paper Co., 102 Wn.2d 219, 232-33, 685 P.2d 1081 (1984). At that point, "the burden shifts to the employer to prove that the dismissal was for reasons other than those alleged by the employee." Id. The burden then shifts back to the plaintiff to show that the reasons for termination were pretextual or the public policy linked conduct was a substantial factor motivating the discharge. Martin, 191 Wn.2d at 726.

Johnson alleges Silver Shores terminated his employment because he intended to enforce his claims to wages and penalties based on the failure to pay him under the terms of his employment agreement. The Washington Supreme

Court has determined that "RCW 49.46.100 contains a clear legislative expression condemning retaliation by an employer against an employee who asserts a claim for overtime pay as contrary to the public interest" and may provide the basis for a discharge in violation of public policy claim. Hume, 124 Wn.2d at 665. The language is not limited to successful or valid claims. Therefore, the ability to file an MWA claim is a public policy interest to be protected whether or not the claim proves successful.

With the existence of a clear mandate of public policy, the burden shifts to Silver Shores to establish that Johnson's dismissal was for reasons other than his threat to file an MWA claim. See Thompson, 102 Wn.2d at 232-33. Silver Shores claims to have terminated Johnson due to his "loud and inappropriate tone" with Fritschi, "profanity and improper treatment of another employee," and his failure to respond to phone calls from Fritschi. Johnson does not deny the allegations that he was rude to Fritschi and unavailable when Fritschi called. He also does not deny improper treatment of another employee. These are prima facie legitimate reasons for termination. This shifts the burden back to Johnson to prove these reasons were a pretext or the alleged threat to enforce his wage claims was a "substantial factor motivating the employer to discharge the worker." Martin, 191 Wn.2d at 726.

Johnson notes that his relationship with the other staff member "was always a source of contention," and "mutually confrontational," but "this had never been an issue" with Fritschi until after Johnson indicated his intention to sue. Similarly,

Johnson's requests for payment beginning in October or November 2016 were generally ignored. In March 2018, Johnson informed Silver Shores he intended to seek legal counsel and file wage claims. Shortly after Johnson said he would assert legal rights, Silver Shores fired him. This evidence is sufficient to raise genuine issues of material fact as to whether Johnson's termination was pretextual or substantially motivated by his threat to file an MWA claim.

Silver Shores was not entitled to summary judgment on the issue of retaliation against Johnson for the assertion of his right to wages under the employment agreement.[3]

The trial court relied upon the arbitration provision in the employment agreement and its one year limitation as a basis for summary judgment. That was error. We hold the arbitration provision and its one year limitation is void as against public policy to the extent it purports to cut off claims under the MWA and claims for retaliatory discharge for asserting rights under the MWA.

Generally, parties to a contract may agree to a shorter time limitation on filing suit, and the "stipulated limitation period will prevail unless prohibited by statute or public policy, or unless the provision is unreasonable." Syrett v. Reisner

---

[3] In considering the motion for summary judgment on the retaliation claim, the trial court relied on the fact that Johnson was working as a contractor in Chelan. Fritschi did not include this as a reason for Johnson's termination and there is no evidence that Fritschi was aware of these facts at the time. The trial court's reliance on this evidence was error. Additionally, the trial court made a credibility determination on summary judgment: "The court does not find the plaintiff credible as he was working as a contractor when he is not one. The court finds in favor of the defendant on this part of the motion." Credibility determinations are improper on summary judgment. See Sanders v. Woods, 121 Wn. App. 593, 600, 89 P.3d 312 (2004).

McEwin & Assoc., 107 Wn. App. 524, 527-28, 24 P.3d 1070 (2001). Silver Shores cites numerous cases in support of its ability to contractually shorten the time. All of these cases affirm the contractually shortened statute of limitations in the context of contracts for services of third parties rather than employment contracts. See Wothers v. Farmer's Ins. Co., 101 Wn. App. 75, 76, 5 P.3d 719 (2000) (one year contractual limitation enforced for lawsuit against insurance company settlement); Ashburn v. Safeco Ins. Co. of Am., 42 Wn. App. 692, 697, 713 P.2d 742 (1986) (one year limitation to bring suit under insurance policy enforced); EPIC v. CliftonLarsonAllen LLP, 199 Wn. App. 257, 260, 402 P.3d 320 (2017) (two year deadline for suit against auditor). None of Silver Shores' cited cases allow for a one year contract limitation on wage claims in an employment relationship and are inapposite.

Looking to employment relationships, "[t]he Legislature has evidenced a strong policy in favor of payment of wages due employees by enacting a comprehensive scheme to ensure payment of wages." Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 157, 961 P.2d 371 (1998). The statute "indicates a strong legislative intent to assure payment to employees of wages they have earned." Id. at 159. The statute is liberally construed in keeping with the intention to protect employee wages and assure payment. Id.

"Rights established by state law are nonnegotiable when they cannot be waived, alienated, or altered by private agreement." Schneider v. Snyder's Foods, Inc., 95 Wn. App. 399, 402, 976 P.2d 134 (1999). This includes the provisions of

the MWA. See id. Basic statutory rights provided by the MWA "may not be waived or altered by a collective bargaining agreement, and . . . employees are not required to arbitrate these 'nonnegotiable' claims." Ervin v. Columbia Distrib., Inc., 84 Wn. App. 882, 891, 930 P.2d 947 (1997) (footnote omitted) (quoting Local 246 Utility Workers Union v. S. Cal. Edison Co., 83 F.3d 292 (9th Cir. 1995)). Moreover, "[a]ny agreement between such employee and the employer allowing the employee to receive less than what is due under this chapter shall be no defense to such action." RCW 49.46.090(1). Any agreement to reduce the statute of limitations would decrease an employee's ability to enforce the wage provision of the MWA. This contravenes the legislative intent demonstrated by the strongly protective measures of the MWA. Therefore, the one year arbitration limitation in Johnson's employment agreement is void both as to any wage claims and as to a claim of retaliation based on assertion of rights under the MWA.

III.    Contractual Compensation, Quantum Meruit and Unjust Enrichment

In addition to the retaliation and MWA overtime claims, Johnson's complaint alleged breach of agreement to pay for services, unjust enrichment, and quantum meruit. According to Johnson, Silver Shores failed to pay him for yard services, administrative work, and maintenance services he agreed to perform outside the terms of his employment agreement.

Unjust enrichment and quantum meruit are methods of recovery based on implied contracts. Young v. Young, 164 Wn.2d 477, 484-85, 191 P.3d 1258 (2008). The burden of proving a contract, either express or implied, is on the party

asserting it. Bogle & Gates, PLLC v. Holly Mountain Res., 108 Wn. App. 557, 560, 32 P.3d 1002 (2001).

Johnson's declaration states that he was asked to perform, and subsequently performed, yard service for $600 or $1,200 per service, an average of 20 hours a week of administrative work for $11 per hour, and maintenance service for $1,200 per month. Based on these statements, Johnson entered oral contracts for additional services separate and apart from his employment agreement for his role as residential manager. Fritschi, in his declaration, agrees that Johnson performed work outside of his employment agreement: "During his employment at Silver Shores, Mr. Johnson sent me many bills for work he claimed to do in the Park outside his role as Community Manager, and I paid those bills every time." The existence of additional contracts between Johnson and Silver Shores was not a disputed fact.[4]

While Fritschi claims to have paid Johnson for this work, Johnson states that he was never compensated for the yard services, administrative work, and maintenance services. The record lacks any invoices or other documentation of amounts Johnson claims are due for the work he performed separate and apart from his employment agreement and lacks documentation of any amounts Fritschi claims that Silver Shores paid Johnson. Genuine issues of material fact exist as

---

[4] We note that the one year arbitration limitation in Johnson's employment agreement would not bar any action arising under separate agreements to perform services. Nothing in the record suggests these additional agreements included any arbitration provision. The record before us does not suggest these additional agreements were employment contracts subject to the MWA, rather than business service agreements.

to whether Johnson was paid for his performance under these additional agreements. Summary judgment was improper on the contractual compensation claims or the alternative claims for unjust enrichment and quantum meruit.

We affirm summary judgment on the MWA claim. We reverse summary judgment on the retaliation, contractual compensation, unjust enrichment, and quantum meruit claims and remand for further proceedings.

Appelwick, J.

WE CONCUR:

Brunen, J.          Andrus, A.C.J.