244 P.3d 32 (2010)
Randy ANFINSON; James Geiger; and Steven Hardie, individually and on behalf of others similarly situated, Appellants,
v.
FEDEX GROUND PACKAGE SYSTEM, INC.; John Schnebeck; Cheryl Pilakowski; and John Does 1 through 10, Respondents.
No. 63518-2-I.
Court of Appeals of Washington, Division 1.
December 20, 2010.
*35 Martin S. Garfinkel, William Joel Rutzick, Schroeter Goldmark & Bender, Rebecca Jane Roe, Attorney at Law, Lawrence Rea Schwerin, Dmitri L. Iglitzin, Schwerin Campbell Barnard Iglitzin & Lavitt, Seattle, WA, for Appellants.
Kelly Patrick Corr, Guy Paul Michelson, Kevin Carl Baumgardner, Emily J. Brubaker, Corr Cronin Michelson Baumgardner & Preece LLP, Seattle, WA, Chris A. Hollinger, O'Melveny & Meyers LLP, San Francisco, CA, for Respondents.
COX, J.
¶ 1 Jury instructions are sufficient if they permit each party to argue their theory of the case, do not mislead the jury, and when read as a whole, properly inform the jury of the applicable law.[1] Here, pickup and delivery drivers working for FedEx Ground Package System, Inc., (FedEx) sued for relief under the Washington Minimum Wage Act (MWA) on behalf of themselves and other drivers similarly situated. They claim a right to overtime pay and attorney fees. They also seek reimbursement for the expenses of their uniforms under the Industrial Welfare Act (IWA).
¶ 2 The primary issue in this case of first impression is whether the court properly instructed the jury on the legal standard for determining whether the drivers are employees or independent contractors for purposes of the MWA. Other jury instructions are also at issue. For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.
¶ 3 Randy Anfinson and two other drivers sued FedEx in December 2004, seeking relief on behalf of themselves and others similarly situated. The trial court granted their motion to certify this case under CR 23 as a class action on behalf of approximately 320 FedEx drivers (collectively, "Anfinson"). The class is defined as:
[A]ll persons who performed services as a pick up and delivery driver, or "contractor," for defendant during the class period (December 21, 2001 through December 31, 2005) who signed (or did so through a personal corporate entity) a FedEx operating agreement and who handled a single route at some point during the class period; excluding persons who only performed or filled one or more of the following positions during the class period: multiple route contractors, temporary drivers, line-haul *36 drivers, or who worked for another contractor.[[2]]
¶ 4 Anfinson seeks overtime wages under the MWA for a period commencing three years prior to December 2004, when this action was filed. The essence of this claim is that the FedEx drivers are "employees" under the MWA, not "independent contractors," as the company classifies them. Anfinson also seeks attorney fees under the MWA and other statutes.
¶ 5 Anfinson also seeks reimbursement for the cost of uniforms under the IWA, RCW 49.12.450. The parties stipulated that if the jury determined that the class members were employees and not independent contractors, FedEx would be liable for overtime wages under the MWA and uniform reimbursement under the IWA.[3]
¶ 6 The court bifurcated the trial into two phases. The first phase was the liability phase and the second phase was to have addressed damages.
¶ 7 A central issue for the liability phase was how the trial court should instruct the jury on the legal standard for whether the drivers are employees of FedEx or independent contractors. The court, drawing on submissions from the parties and its own research, fashioned a preliminary and a final instruction for the jury on this question. They were worded substantially the same. These instructions are the primary issue on appeal.
¶ 8 After a four week trial on liability issues, the jury returned a defense verdict for FedEx. The jury decided that the class members were independent contractors, not employees.[4] The court entered judgment on that verdict, dismissing the case.[5]
¶ 9 Anfinson appeals.

JURY INSTRUCTIONS
¶ 10 Anfinson challenges both the trial court's decisions to give certain instructions and its refusal to give others. We agree with some of these challenges and disagree with others.
¶ 11 Jury instructions are sufficient if they permit each party to argue their theory of the case, do not mislead the jury, and when read as a whole, properly inform the jury of the applicable law.[6] No more is required.[7]
¶ 12 "On appeal, jury instructions are reviewed de novo, and an instruction that contains an erroneous statement of the applicable law is reversible error where it prejudices a party."[8] An error is prejudicial if it affects the outcome of the trial.[9]
When the record discloses an error in an instruction given on behalf of the party in whose favor the verdict was returned, the error is presumed to have been prejudicial, and to furnish ground for reversal, unless it affirmatively appears that it was harmless....
A harmless error is an error which is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party assigning it, and in no way affected the final outcome of the case.[[10]]
¶ 13 In contrast, a trial court's decision whether to give a particular instruction to the jury is a matter that we review only for abuse of discretion.[11] The abuse of discretion standard also applies to questions about the number of instructions and the specific wording of instructions.[12]
*37 ¶ 14 Refusal to give a particular instruction is an abuse of discretion only if the decision was "manifestly unreasonable, or [the court's] discretion was exercised on untenable grounds, or for untenable reasons."[13] If a party's theory of the case can be argued under the instructions given as a whole, then a trial court's refusal to give a requested instruction is not reversible error.[14]
¶ 15 The fact that a proposed jury instruction includes language used by a court in the course of an opinion does not necessarily make it a proper jury instruction.[15]

Preliminary Instruction and Instruction 9
¶ 16 Anfinson's primary argument is that the court's preliminary instruction, as well as Instruction 9 (collectively, "Instruction 9"), misstates the law. Specifically, the class members argue that this instruction erroneously states the legal standard for distinguishing between employees and independent contractors for purposes of the MWA. Anfinson argues Instruction 9, which focuses on whether an employer has the "right to control the details of the class members' performance of the work" is incorrect. We hold that Instruction 9 incorrectly states the law and was prejudicial to Anfinson.
¶ 17 In considering Anfinson's arguments, we have several preliminary observations. First, the question whether the FedEx drivers are employees or independent contractors for purposes of the MWA is a question of first impression in Washington. Second, there are a wide variety of approaches in other states that have considered the same or similar questions.[16] Third, in contrast to the multiplicity of approaches by various states, the Supreme Court and all federal circuits agree that "the economic realities" test is the applicable test for the Fair Labor Standards Act (FLSA), on which the MWA is based.[17] Finally, Anfinson submitted supplemental authority during this appeal stating the approach taken by the Washington Department of Labor and Industries (DLI) on this question.[18] For the reasons that we explain later in this opinion, that authority from DLI is helpful in deciding this question.
¶ 18 That said, we focus first on the question of what legal standard should control, for purposes of the MWA, whether one is an "employee" or an "independent contractor." This is a mixed question of fact and law.[19]
¶ 19 Here, the trial court's Instruction 9 states:

*38 You must decide whether the class members were employees or independent contractors when performing work for FedEx Ground. This decision requires you to determine whether FedEx Ground controlled, or had the right to control, the details of the class members' performance of the work.

In deciding control or right to control, you should consider all the evidence bearing on the question, and you may consider the following factors, among others:
1. The degree of FedEx Ground's right to control the manner in which the work is to be performed;
2. The class members' opportunity for profit or loss depending upon each one's managerial skill;
3. The class members' investment in equipment or materials required for their tasks, or their employment of others;
4. Whether the service rendered requires a special skill;
5. The degree of permanence of the working relationship;
6. Whether the service rendered is an integral part of FedEx Ground's business;
7. The method of payment, whether by the time or by the job; and
8. Whether or not the class members and FedEx Ground believed they were creating an employment relationship or an independent contractor relationship.
Neither the presence nor the absence of any individual factor is determinative.[[20]]
¶ 20 The overtime wage provision of the MWA that is primarily at issue for purposes of Instruction 9 is RCW 49.46.130. That statute states in relevant part:
(1) Except as otherwise provided in this section, no employer shall employ any of his [or her] employees for a work week longer than forty hours unless such employee receives compensation for his [or her] employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he [or she] is employed.[[21]]
¶ 21 RCW 49.46.010, the definitional section of the MWA states:
....
(3) "Employ" includes to permit to work;
(4) "Employer" includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee;
(5) "Employee" includes any individual employed by an employer. [A list of specific exclusions follows, none of which apply to this case.][[22]]
¶ 22 In interpreting statutory language, our goal is to effectuate the legislature's intent.[23] Where a statute's meaning is plain, we give effect to that plain meaning as the expression of the legislature's intent.[24] "In determining the plain meaning of a provision, we look to the text of the statutory provision in question as well as `the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'"[25] If the statute is susceptible to more than one reasonable interpretation, "it is ambiguous and we `may resort to statutory construction, legislative history, and relevant case law' to resolve the ambiguity."[26]
¶ 23 The above definitions provide little guidance for determining whether an employment relationship exists in any particular case for purposes of the MWA. We thus turn to the established rules of statutory construction to address that question.
*39 ¶ 24 In analyzing these provisions of the MWA, we are guided by our supreme court's decision in Stahl v. Delicor of Puget Sound, Inc.[27] That case involved a class claim that Delicor's commission plan violated the MWA provisions respecting overtime wages.[28] At issue was whether delivery drivers and vending machine stackers were exempt workers under the retail sales exemption of the MWA, RCW 49.46.130(3).[29] The supreme court ultimately held that the legislature intended that all employees of retail and service establishments could be paid under the retail sales exemption regardless of their duties.[30]
¶ 25 The supreme court's analysis of RCW 49.46.130(3) is helpful here because RCW 49.46.130(1), a related section, is at issue in this case. In Stahl, the supreme court stated that in enacting the MWA, "the legislature broadly defined employee in RCW 49.46.010(5) to include any individual employed by an employer."[31] The court also stated that "the legislature used the term `any' to modify `employee,' and Washington courts have consistently interpreted the word `any' to mean `every' and `all.'"[32] Thus, the broad sweep of the statute evidences its remedial purpose.[33]
¶ 26 It is also significant that the supreme court noted both that the MWA is "based on the Fair Labor Standards Act of 1938 (FLSA)," and that a review of that act supported the court's conclusions regarding the MWA.[34] Moreover, the court observed that its interpretation of the MWA was consistent with the then current interpretation of the MWA by the DLL.[35]
¶ 27 In view of the supreme court's reliance on the FLSA in analyzing the MWA in Stahl and other cases,[36] review of the history of both statutes is helpful to our task here.
¶ 28 The legislature enacted the MWA in 1959.[37] Subject to specific exclusions that are not at issue here, the MWA requires employers to pay their employees overtime pay for the hours they work over 40 hours per week.[38]
¶ 29 The MWA, including its definitions, is patterned on the Fair Labor Standards Act of 1938.[39] The FLSA defines the term "employ" as "includes to suffer or permit to work,"[40] and "employee" as "any individual employed by an employer."[41] A respected commentator has observed that many of the provisions of the MWA are identical or comparable to the FLSA provisions.[42] In addition, the Washington legislature *40 amended the overtime provisions of the MWA to conform to the FLSA in 1975.[43]
¶ 30 The FLSA was enacted in 1938 for the purposes of remedying low wages and long working hours.[44] Recognizing these broad remedial purposes, the United States Supreme Court has held that common-law distinctions between employees and independent contractors are not determinative for the purpose of FLSA coverage.[45] Instead, the test for purposes of the FLSA is whether the worker is an employee as a matter of economic reality.[46] Federal courts have identified certain factors that are useful in deciding whether a worker is an employee as a matter of economic reality.[47] These courts have held that no single factor is determinative, but that the test depends "upon the circumstances of the whole activity" and ultimately, whether as a matter of economic reality, the individual is dependent on the business to which he renders service.[48]
¶ 31 In contrast to the economic realities test, the common law "right to control" test for determining whether a worker is an employee or an independent contractor is derived from the common law of torts.[49] The distinction between independent contractors and employees arose at common law to limit the principal's vicarious liability for the misconduct of a person rendering service to the principal.[50] In this context, the principal's supervisory power was crucial because "[t]he extent to which the employer had a right to control [the details of the service] activities was ... highly relevant to the question [of] whether the employer ought to be legally liable" for the worker's actions.[51]
¶ 32 The purpose of the distinction between an employee and an independent contractor is thus substantially different in these two areas of law. While the common law "right to control" test was developed to define an employer's liability for injuries caused by his employee, the purpose of the MWA is to provide remedial protections to workers.[52] As discussed above, federal courts have recognized that this distinction between tort policy and social legislation policy justifies a departure from common law principles when an employer claims that a worker is excluded as an independent contractor from a statute protecting "employees." There is no reason to conclude that state law should not also recognize the differences in the policies underlying tort law and this remedial legislation.
¶ 33 The economic realities test used by a majority of the federal circuits has six factors.[53] They are:
(1) the permanence of the working relationship between the parties;

*41 (2) the degree of skill the work entails;
(3) the extent of the worker's investment in equipment or materials;
(4) the worker's opportunity for profit or loss;
(5) the degree of the alleged employer's control over the worker;
(6) whether the service rendered by the worker is an integral part of the alleged employer's business.[[54]]
¶ 34 Instruction 9 includes introductory language from the common law "right to control" test for distinguishing between agents and independent contractors, which is stated in Washington Pattern Jury Instruction (WPI) 50.11.01.[55] The first six numbered factors that follow the introductory language are adopted from the FLSA "economic realities" test used by the majority of the federal circuits.[56] Factor seven is from a Washington tort case.[57] Factor eight is from a California case.[58] In short, this instruction is a mix of federal and state common law factors.
¶ 35 The common-law and "economic realities" tests overlap to some extent. For example, the first factor of the economic realities test, the "right to control," is essentially the same as the common-law test. But the primary focus of the two tests is different. Under Washington's common-law test, the ultimate inquiry is whether the employer has the right to control the worker's performance.[59] Under the FLSA test, in contrast, the ultimate inquiry is whether, as a matter of economic reality, the worker is dependent on the alleged employer.[60]
¶ 36 With these considerations in mind, we hold that the economic realities test used by the majority of the federal circuits should be the proper legal test for determining whether a worker is an employee under the MWA. Instruction 9, while including some factors drawn from this test, defines the ultimate test for determining whether a worker is an "employee" under the MWA as the "right of control" over the worker's performance. This is legally incorrect.
¶ 37 Stahl and other supreme court cases make clear that Washington's MWA is patterned on the FLSA. Given this and the legislative history of the MWA, we conclude that the federal test of "economic realities" used by a majority of the federal circuit courts is most persuasive, given the parallel remedial purposes of the state and federal acts.
¶ 38 In Stahl, the supreme court also looked to DLI's then current interpretation of RCW 49.46.130 for guidance.[61] So do we for purposes of our analysis here.
¶ 39 DLI has substantially adopted the six factor economic realities test used by the majority of federal circuits as the interpretive rubric through which to distinguish employees from independent contractors.[62] DLI is the state agency charged with interpreting and carrying out Washington's minimum wage laws.[63] We give great weight to an agency's interpretation of a statute absent a compelling indication that its interpretation conflicts with the legislative intent.[64]
*42 ¶ 40 The six factors that DLI identifies for that test are:
1. The degree of control that the business has over the worker.
2. The worker's opportunity for profit or loss depending on the worker's managerial skill.
3. The worker's investment in equipment or material.
4. The degree of skill required for the job.
5. The degree of permanence of the working relationship.
6. The degree to which the services rendered by the worker are an integral part of the business.[[65]]
DLI's adoption of this test is an additional reason for our conclusion that the "economic realities" test is the proper test to use for purposes of the MWA.[66]
¶ 41 Because this instructional error was given on behalf of the party in whose favor the verdict was returned, we presume that it was prejudicial. Therefore, we reverse.
¶ 42 FedEx argues that Anfinson was still able to argue effectively its theory of the case under Instruction 9 because of the presence of the six factors used by the majority of federal circuits. But Instruction 9 clearly states that the "right of control" is determinative. Thus, Anfinson could not effectively argue that the six factors of the "economic realities" test were determinative. This is particularly true in light of the presence of two additional factors in this instruction, neither of which is considered in the economic realities test. Our review of the final arguments by the parties supports our conclusion that this instruction was prejudicial to Anfinson.
¶ 43 FedEx relies on Ebling v. Gove's Cove[67] to support the giving of Instruction 9. That case is distinguishable and not persuasive for purposes of the MWA. There, Ebling was fired by his employer, who then failed to pay him the agreed commission for work Ebling had previously performed.[68] Ebling sued for damages, plus double damages and attorney fees pursuant to wage and hour statutes, RCW 49.52.050(2) and RCW 49.52.070.[69] Ebling prevailed and his employer appealed.[70] This court affirmed, concluding that Ebling was an employee of Gove's Cove, not an independent contractor. The court used the common law "right to control" test articulated in Hollingbery v. Dunn[71] in determining that Ebling was an employee.[72]
¶ 44 First, the court's analysis gives no indication that either party argued that any test for distinguishing employees from independent contractors other than the common law test should apply. Second, it is significant that the statutory framework in the wage and hour laws at issue in Ebling is not based on the FLSA. Thus, there was no reason for that court to consider the persuasive authority of the FLSA on that state law.
¶ 45 Third, Hollingbery, on which Ebling relied, sets forth the common law standard *43 for determining whether a worker is an employee or an independent contractor in Washington in the context of tort law.[73] There, our supreme court adopted the Restatement (Second) of Agency § 220(2) as setting forth the relevant factors to be considered in determining whether a worker is an employee in the context of determining respondeat superior liability.[74] As we explained earlier in this opinion, the definition of an "employee" under the MWA is distinct and broader than the definition of an "employee" under the doctrine of respondeat superior in tort law.
¶ 46 For these reasons, neither the reasoning in Ebling nor Hollingbery is persuasive with respect to the question of what legal standard should be used to distinguish an "employee" from an "independent contractor" under the MWA.
¶ 47 We note that the record indicates that the trial court also gave particular weight to the application of California's common law test in Estrada v. FedEx Ground Package System, Inc.[75] and S.G. Borello & Sons, Inc. v. Dep't of Industrial Relations.[76] Neither case is helpful here.
¶ 48 In Estrada, a case seeking reimbursement for work-related expenses under the California Labor Code, the court accepted Borello as stating the applicable standard for determining whether a worker is an employee or an independent contractor because no party disputed the applicability of that test.[77] But Borello is not on point for the question that must be addressed by this court: what test should be applied under Washington's MWA?
¶ 49 Borello addressed whether a class of workers qualified as employees under the California Worker's Compensation Act. That act defines an employee as including most "persons in the service of an employer under any ... contract of hire,"[78] but excludes "independent contractors" who are defined as "any person who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished."[79]
¶ 50 As the Borello court plainly stated, the act excludes "independent contractors" from coverage and "inserts the common law `control-of-work' test in the statutory definition."[80] Although the court went on to indicate that case law extends "these principles to other `employee' legislation as well," it is clear that the analysis in Borello was derived from statutory definitions that differ from those in Washington.[81]
¶ 51 The distinction between the California Labor Code and Washington's MWA was recently made even clearer in Martinez v. Combs,[82] a California Supreme Court decision that was filed after the parties in this case submitted their briefs on appeal. There, the California Supreme Court explained its reasons for rejecting the application of the "economic realities" test to a claim for minimum wage coverage: the genesis of California's minimum wage laws is distinct from the FLSA.[83] The court held that the California law does not incorporate the federal definition of employment.[84] Specifically, the court pointed out that California adopted its minimum wage laws in 1913, several decades *44 before the FLSA was enacted.[85] It stated that the revised definition of "employer" in the California law is intended to "distinguish [the] state wage law from its federal analogue, the FLSA."[86]
¶ 52 Because the California Labor Code and minimum wage laws are not patterned on the FLSA, the trial court incorrectly relied on the California courts' articulation of that state's common law test for distinguishing between an employee and an independent contractor under the MWA.
¶ 53 Anfinson also argues that factors three and eight of Instruction 9 incorrectly state the applicable law. We agree in part.
¶ 54 Anfinson first argues that factor three of Instruction 9 should have referred to the "relative" investments of the parties. While all federal circuits agree that the economic realities test is the proper test,[87] only the Fifth Circuit states relative investment of the parties as one of six factors to be used in determining the economic realities of the relationship between the parties.[88] We conclude that the test in Washington should be based on the test articulated by the majority of the federal circuit courts and that the "relative" investment of the parties is not articulated in that test.[89] Accordingly, we reject Anfinson's challenge to that part of Instruction 9.
¶ 55 Anfinson next argues that factor eight of Instruction 9, the belief of the parties, is not a relevant factor under the FLSA test used by the majority of the federal circuits. We agree.
¶ 56 While Washington is not bound to strictly follow the test used by the majority of federal circuits, that test is persuasive. We have heard no persuasive argument why that test should not be used here. However, we acknowledge that the trial court, on remand, may hear such arguments, and we do not prejudge any ruling the trial court may make on that question.

Anfinson's Proposed Instructions 13C
¶ 57 Anfinson next argues that the court abused its discretion by refusing to give his Proposed Instruction 13C. We disagree.
¶ 58 Proposed Instruction 13C states:
In order to determine whether class members are employees or independent contractors, you should consider the following six factors:
(1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
(2) the extent of the relative investments of the alleged employer and employee and whether the alleged employee employs helpers;
(3) the alleged employee's opportunity for profit or loss depending upon his or her managerial skills;
(4) whether the service rendered requires a special skill;
(5) the degree of permanence of the working relationship; and
(6) whether the service rendered is an integral part of the alleged employer's business.

You may also consider other evidence bearing on this matter (including whether the alleged employer and alleged employees' believed or stated that they were creating an employment relationship or an independent contractor relationship) only to the extent that such statements or beliefs mirror economic reality. No one factor is controlling but *45 you should weigh them all to determine whether or not the class members are so dependent upon defendant's business such that class members are not, as a matter of economic reality, in business for themselves. If you find that class members were, as a matter of economic reality, dependent upon defendant during the class period, you should find that class members were employees of defendant. On the other hand, if you find that class members, as a matter of economic reality, were not dependent upon defendant during the class period, you should find that class members were independent contractors.[[90]]
¶ 59 As we just explained, relative investment of the parties is not among the six factors that a majority of the federal circuits use to determine the economic realities of the relationship between the parties. Moreover, even the Fifth Circuit, which includes this factor, states its six factor test differently from this proposed instruction. Thus, for both reasons, this proposed instruction does not correctly state the economic realities test followed by any of the federal circuits. We hold that the trial court did not abuse its discretion in refusing this proposed instruction, although we affirm the trial court on different grounds than the court utilized.

Judicial Estoppel
¶ 60 FedEx argues that judicial estoppel should preclude Anfinson from arguing that Instruction 9 is erroneous. The trial court implicitly rejected this argument below, and so do we.
¶ 61 Judicial estoppel is an equitable doctrine that "precludes a party from asserting one position in court proceedings and later seeking an advantage by taking a clearly inconsistent position."[91] Judicial estoppel requires the court to analyze three questions: (1) whether a party's current position is inconsistent with an earlier position; (2) whether judicial acceptance of an inconsistent position in the later proceeding will create the perception that the party misled either the first or second court; and (3) whether the party asserting the inconsistent position will obtain an unfair advantage or impose an unfair detriment on the opposing party if not estopped.[92]
¶ 62 We review the trial court's decision whether to apply judicial estoppel for an abuse of discretion.[93] A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.[94] A trial court's decision is manifestly unreasonable only if it is outside the range of acceptable choices, given the facts and the applicable legal standard.[95]
¶ 63 Anfinson moved to certify the class based on the theory that the common law "right to control" test articulated in Ebling was the correct legal standard for determining whether the class members were employees or independent contractors under the MWA. The court accepted this representation, stating in its Findings and Order on Class Certification that "[t]he critical test is whether FedEx had the `right to control' the manner and means of the work performed."
¶ 64 Anfinson did not change its position as to the applicable test until pretrial motions a few months before the trial was set to commence. At that point, Anfinson proposed a series of alternative jury instructions, one of which was based on the "economic realities" test. FedEx responded to Anfinson's change in position by arguing that judicial estoppel precluded him from using the "economic realities" test because that argument is inconsistent with the legal standard that Anfinson proposed, and the trial court used, during the class certification phase of the litigation. FedEx, who did not cross-appeal, *46 asserts the same argument in a footnote to its appellate brief.[96]
¶ 65 The trial court appears to have rejected FedEx's argument by dealing with the issue on the merits.
¶ 66 In a footnote, FedEx now argues that the doctrine of judicial estoppel should preclude Anfinson's arguments on appeal with respect to Instruction 9. FedEx claims these arguments are inconsistent with his legal position during the class certification proceedings that the common law "right to control" test was the applicable legal standard for determining whether the class members were independent contractors or employees.
¶ 67 But, the "heart of the doctrine [of judicial estoppel] is the prevention of inconsistent positions as to facts. It does not require counsel to be consistent on points of law."[97] Here, Anfinson's position on appeal is not factually inconsistent with his arguments in the class certification proceeding. Thus, the doctrine of judicial estoppel does not apply.

Anfinson's Proposed Instructions 4 and 4A
¶ 68 Anfinson also argues that the trial court abused its discretion by declining to give Anfinson's proposed instructions 4 and 4A.
¶ 69 Proposed Instruction 4 states:
Plaintiffs have signed operating agreements, or contracts, with defendant. These contracts state, among other things, that plaintiffs are "independent contractors." The contractual label of "independent contractor" does not determine whether plaintiffs are independent contractors or employees. You must determine whether plaintiffs are employees or independent contractors based on the actual relationship between plaintiffs and defendant. Stated otherwise, the subjective intent of the plaintiffs and defendant cannot override the facts of this actual relationship.[[98]]
Proposed instruction 4A is identical to proposed instruction 4, but omits the last sentence.
¶ 70 The trial court declined to give these instructions, in part, because it believed they overemphasized one of the factors the court believed controlled the case. We cannot say that the court abused its discretion in making this decision on that basis under those circumstances. In any event, because of our decision on Instruction 9, further discussion of these proposed instructions is likely moot. We do not envision that these instructions will likely be proposed on remand. If they are, we have given the trial court and the parties sufficient guidance.

Anfinson's Proposed Instruction 15A
¶ 71 Anfinson also argues that the trial court abused its discretion by declining to give Anfinson's proposed instruction 15A.
¶ 72 That instruction states:
The fact that one or more of the plaintiffs, who provided services to defendant, did so through his or her personal business entity should not impact your decision in this case. If, applying the six factors set forth in Instruction No. ___, you find that the plaintiffs were so dependent upon defendant's business such that plaintiffs were not, as a matter of economic reality, in business for themselves during the class period, you must find that plaintiffs were employees of defendant.[[99]]
¶ 73 In view of our holding as to the proper test for distinguishing between employee and independent contractor, we need not address this claim. This instruction is unlikely to be proposed on remand.

*47 Instruction 8

¶ 74 Anfinson argues that the trial court abused its discretion in giving the jury Instruction 8. We hold that instruction was misleading and likely prejudicial. It also appears to be legally incorrect.
¶ 75 While the trial court has discretion with respect to the specific wording and number of jury instructions, the instructions must accurately state the law and may not mislead the jury.[100] Instruction 8 states:
Plaintiffs have the burden of proving that "employee" status was common to the class members during the class period. You should not consider individualized actions, conduct, or work experiences unless you find that they reflect policies, procedures, or practices common to the class members during the class period.[[101]]
¶ 76 We note that when the trial court took exceptions to its instructions to the jury, the court expressly rejected FedEx's proposal that this instruction should have stated "that employee status was common to all class members." The court stated in its ruling: "Specifically the court is persuaded that commonality does not require each and every class member be affected individually by the actions, conduct, or work experience if they have promulgated pursuant to a policy or widespread procedure or practice common to the class members during the class period."[102]
¶ 77 Nevertheless, during closing argument, FedEx argued that "common" means "all" or every class member for purposes of this instruction. "[I]f [plaintiffs] showed you that only 319 [class members were employees] and one wasn't, your verdict should be for FedEx Ground because they haven't met their burden. They have to show you all."[103]
¶ 78 Anfinson neither objected to this argument nor sought a curative instruction during closing. Rather, Anfinson argued that "common" means "frequent and widespread," not "all."[104]
¶ 79 Under these circumstances, we conclude that the wording of the instruction was misleading and likely prejudicial to Anfinson. It was misleading because it permitted the jury to accept an argument that the court expressly ruled could not be made. "Common" does not mean "all," as FedEx argued during closing. Absent an objection and a request for a curative instruction, this instruction permitted the jury to decide that Anfinson failed to prove his case if any one member of the class failed to fulfill any of the relevant class criteria. There is no legal support for that proposition.
¶ 80 Based on the briefing on appeal and our independent research we also conclude that the instruction appears to be legally incorrect. In so concluding, we note the complexity of this issue and the dearth of persuasive case law addressing the issue. On remand, the parties should brief the question for the trial court to decide, with the following considerations in mind.
¶ 81 First, in addition to Instruction 8, the trial court gave the standard burden of proof instruction based on WPI 2.101 as Instruction 7. That instruction stated:
When it is said that a party has the burden of proof on any proposition, or that any proposition must be proved by a preponderance of the evidence, or the expression "if you find" is used, it means that you must be persuaded, considering all the evidence in the case bearing on the question, that the proposition on which that party has the burden of proof is more probably true than not true.[[105]]
It appears that Instruction 8 was intended to supplement this initial statement of the burden of proof. Whether this was proper under the circumstances of this case is unclear.
¶ 82 Second, as discussed above, the first sentence of Instruction 8 is incorrect because CR 23 does not require commonality as to evidence for the liability phase of a class *48 action.[106] Commonality is a requirement at the certification phase of a class action proceeding.[107] Under CR 23(a)(2), before certifying a class, the court must conclude that "there are questions of law or fact common to the class." In addition, the court must find that one of the alternatives under CR 23(b) is satisfied. Here, the court certified the class under CR 23(b)(3), concluding that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."[108]
¶ 83 A court should order class certification only after conducting a "rigorous analysis" to ensure that the plaintiff has satisfied CR 23's prerequisites.[109] But contrary to FedEx's representation, CR 23 does not require "that the shared questions of law or fact be identical" as to each individual class member.[110] Evidence from individual class members may be used to demonstrate a common course of conduct by the defendant employer.[111] If a defendant believes that the trial court certified the plaintiff class in error or that the requirements of CR 23 are no longer satisfied, he may move for decertification at any point during the proceedings.[112] Here, FedEx moved for decertification and the court denied that motion. To the extent that FedEx relies on case law from the class certification stage of a CR 23 action, that case law is not persuasive as to the plaintiff's burden of proof at the liability phase of trial. In short, commonality for certification purposes is separate from the burden of proof at the liability phase.
¶ 84 Third, with respect to the second sentence in Instruction 8, this too appears to be incorrect. While Anfinson bears the burden of demonstrating that FedEx incorrectly classified the class members as independent contractors, FedEx has failed to point to persuasive authority holding that the finder of fact is prohibited from considering individualized actions, conduct, or work experiences in making this determination. The jury must consider all of the evidence adduced at trial to determine whether the class members were employees as a matter of economic reality.[113] But, evidence need not be identical as to each individual class member.[114] Rather, FLSA case law indicates that once at trial, plaintiffs may rely on testimony and evidence of representative employees to prove that the defendant's practices or policies impacted similarly situated employees.[115]
¶ 85 Here, Instruction 8 did not inform the jury that it could consider representative evidence only to the extent it demonstrated FedEx's policies or practices. Rather, it instructed the jury that it "should not consider individualized actions, conduct, or work experiences unless you find that they reflect *49 policies, procedures, or practices common to the class members during the class period."[116] This is incorrect.
¶ 86 FedEx relies on In re FedEx Ground Package System, Inc.[117] to support the proposition that representative evidence is not appropriate in the context of determining employment status. That case is distinguishable. There, the court granted FedEx's motion to strike evidence of individual class members' employment experiences.[118] But there, the test for determining employment status was the common law "right to control" test.[119] The court noted in its class certification order, "the court recognized the common application of the Operating Agreement and FedEx policies and procedures in determining the merits of class action cases, but indicated it wouldn't consider any individualized evidence of the parties' relationship."[120]
¶ 87 Here, however, the test for determining whether FedEx delivery drivers are independent contractors or employees is not whether FedEx had the "right to control" the workers. Rather, the test in Washington for determining employment status is the "economic reality" of the working relationship. Under this test, it is likely that evidence of the actual working relationship between FedEx and FedEx drivers would be relevant and probative. For this reason, FedEx's reliance on FedEx Ground Package System is not persuasive.
¶ 88 Finally, FedEx argues that the cases Anfinson cites to support the propriety of representative evidence in the wage and hour law context are distinguishable. We agree that the cases Anfinson cites deal primarily with the issue of damages under the FLSA and are in that sense distinguishable from the issue in this case.[121] However, we conclude that they do not support the court's Instruction 8.
¶ 89 In Anderson v. Mt. Clemens Pottery Co.,[122] the Supreme Court concluded that due to the remedial nature and the great public policy of the FLSA, the burden of proof for an employee who brings suit for unpaid minimum wages or unpaid overtime compensation under the act should not be insurmountable.[123] The Court concluded that the appropriate burden of proof for a claim of uncompensated work under the FLSA is "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."[124]
¶ 90 Anderson is distinguishable from this case in that the discussion of the burden of proof was related only to the measure of damages, not the fact of liability.[125] Here, on the other hand, the issue is liability itself, not the resulting damages. However, as discussed at length above, the test for determining liability is whether the class of plaintiffs was, as a matter of economic reality, dependant on FedEx. This determination requires analysis of the written practices and procedures of FedEx. But it also requires analysis of the actual working relationship of the parties, which may only be presented in the form of representative evidence from individual class members.
¶ 91 For these reasons Instruction 8 appears to be legally incorrect. Because it was also misleading and prejudicial, it should not have been given.

Anfinson's Proposed Instruction 11A and 12A
¶ 92 Anfinson also argues that the trial court abused its discretion in refusing to give *50 Anfinson's proposed instructions 11A and 12A. We disagree.
¶ 93 Anfinson's proposed Instruction 11A and Instruction 12A deal with the burden of proof and the issue of representative evidence. As discussed at length above with respect to Instruction 8, the case law on these issues is inconclusive. For that reason, we conclude that the trial court did not abuse its discretion in declining to give these instructions.

JURY VERDICT FORM
¶ 94 Anfinson argues that the trial court erred by giving its Special Verdict Form and refusing to give the Proposed Verdict Form [Second Alternative]. We disagree.
¶ 95 Jury verdict forms, like jury instructions, are sufficient when they "allow the parties to argue their theories of the case, do not mislead the jury and, when taken as a whole, properly inform the jury of the law to be applied."[126] We review alleged errors of law in jury instructions and verdict forms de novo.[127]
¶ 96 Here, the court gave its form of Jury Verdict, which read as follows:
We, the jury, find that during the class period, December 21, 2001 to December 31, 2005, the class members were (check one):
[] Independent Contractors
[] Employees[[128]]
The question here is whether the court or the jury should make the determination whether a claimant is an employee under the MWA or an independent contractor. We hold that this is a jury question.
¶ 97 Employment status is a mixed question of fact and law.[129] Mixed questions of fact and law may be submitted to a jury under proper instructions, "unless the facts are undisputed and the inferences to be drawn from them are plain and not open to doubt by reasonable persons."[130] Where the facts are disputed, the determination of employment status is properly a question for the trier of fact.[131]
¶ 98 Here, where the facts were highly contested, it was appropriate for the verdict form to ask the jury to determine whether the class members were "employees" or "independent contractors."
¶ 99 Based on Tift v. Professional Nursing Services, Inc.,[132] Anfinson argues that the jury should have been given a special verdict form for factual determinations about the factors contained in the employment status test. This would have left the final determination of employment status to the trial court. In Tift, this court concluded that "[t]he ultimate finding as to employee status is not simply a factual inference drawn from historical facts, but more accurately, is a legal conclusion based on factual inferences drawn from historical facts."[133]
*51 ¶ 100 While Anfinson's citation to Tift is accurate, we conclude that the trial court did not err in submitting the question of employment status to the jury.

ATTORNEY FEES
¶ 101 Anfinson seeks fees on appeal based on RCW 49.46.090 and RCW 49.48.030. Because it is premature to determine whether such an award is proper at this stage of this case, we deny the request without prejudice to a future application for such fees.
¶ 102 RCW 49.46.090(1) of the MWA provides in relevant part:
[a]ny employer who pays any employee less than wages to which such employee is entitled under or by virtue of this chapter, shall be liable to such employee affected for the full amount of such wage rate, less any amount actually paid to such employee by the employer, and for costs and such reasonable attorney's fees as may be allowed by the court.
¶ 103 Furthermore, RCW 49.48.030 of the wage statute provides:
In any action in which any person is successful in recovering judgment for wages or salary owed to him [or her], reasonable attorney's fees, in an amount to be determined by the court, shall be assessed against said employer or former employer: PROVIDED, HOWEVER, That this section shall not apply if the amount of recovery is less than or equal to the amount admitted by the employer to be owing for said wages or salary.
¶ 104 Because we remand this case for further proceedings, there has been no judgment for wages under the MWA. Likewise, there has been no determination that FedEx has paid less than the wages that are due. Accordingly, a fee award on the basis of either statute is premature.
¶ 105 We affirm in part, reverse in part, and remand for further proceedings.
WE CONCUR: DWYER, C.J., and BECKER, J.
NOTES
[1] Cox v. Spangler, 141 Wash.2d 431, 442, 5 P.3d 1265 (2000).
[2] Clerk's Papers at 217.
[3] Report of Proceedings (March 27, 2009) at 7.
[4] Clerk's Papers at 2220.
[5] Clerk's Papers at 2383-85.
[6] Cox, 141 Wash.2d at 442, 5 P.3d 1265.
[7] Leeper v. Dep't of Labor and Industries, 123 Wash.2d 803, 809, 872 P.2d 507 (1994).
[8] Cox, 141 Wash.2d at 442, 5 P.3d 1265.
[9] State v. Wanrow, 88 Wash.2d 221, 237, 559 P.2d 548 (1977).
[10] Id. (emphasis omitted).
[11] Stiley v. Block, 130 Wash.2d 486, 498, 925 P.2d 194 (1996).
[12] Hue v. Farmboy Spray Co., 127 Wash.2d 67, 92, 896 P.2d 682 (1995).
[13] Boeing v. Harker-Lott, 93 Wash.App. 181, 186, 968 P.2d 14 (1998).
[14] Van Cleve v. Betts, 16 Wash.App. 748, 756, 559 P.2d 1006 (1977).
[15] Swope v. Sundgren, 73 Wash.2d 747, 750, 440 P.2d 494 (1968); Hammond v. Braden, 16 Wash. App. 773, 776, 559 P.2d 1357 (1977).
[16] See In re FedEx Ground Package System, Inc., Employment Practices Litigation, ___ F.R.D. ___, 2008 WL 7764456 (N.D.Ind.2008) (discussing the test applied to determine employment status in Alabama, Arkansas, California, Florida, Illinois, Indiana, Iowa, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, New Hampshire, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Virginia, West Virginia, and Wisconsin).
[17] See Bartels v. Birmingham, 332 U.S. 126, 130, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947); Donovan v. Agnew, 712 F.2d 1509, 1510 (1st Cir.1983); Brock v. Superior Care, Inc., 840 F.2d 1054, 1058-59 (2nd Cir.1988); Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1383 (3rd Cir. 1985); Steelman v. Hirsch, 473 F.3d 124, 128 (4th Cir.2007); Herman v. Express Sixty-Minutes Delivery Service, Inc., 161 F.3d 299, 303 (5th Cir.1998); Donovan v. Brandel, 736 F.2d 1114, 1117 (6th Cir. 1984); Sec'y of Labor v. Lauritzen, 835 F.2d 1529, 1535 (7th Cir.1987); Blair v. Wills, 420 F.3d 823, 829 (8th Cir.2005); Donovan v. Sureway Cleaners, 656 F.2d 1368, 1370 (9th Cir.1981); Dole v. Snell, 875 F.2d 802, 805 (10th Cir. 1989); Brouwer v. Metropolitan Dade County, 139 F.3d 817, 818-19 (11th Cir.1998).
[18] Statement of Additional Authorities by Appellants/Plaintiffs dated July 12, 2010; RAP 10.8.
[19] See Graves v. P.J. Taggares Co., 94 Wash.2d 298, 302-03, 616 P.2d 1223 (1980) ("`Whether a relationship is one of agency or independent contractorship can only be decided as a matter of law where there are no facts in dispute and the facts are susceptible of only one interpretation.'") (quoting Larner v. Torgerson, 93 Wash.2d 801, 804, 613 P.2d 780 (1980)); Brock, 840 F.2d at 1059 ("The existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those factswhether workers are employees or independent contractorsis a question of law.").
[20] Clerk's Papers at 2195 (emphasis added).
[21] (Emphasis added.)
[22] (Emphasis added.)
[23] Bostain v. Food Exp., Inc., 159 Wash.2d 700, 708, 153 P.3d 846 (2007) (citing State v. Jacobs, 154 Wash.2d 596, 600, 115 P.3d 281 (2005)).
[24] Id. (citing Jacobs, 154 Wash.2d at 600, 115 P.3d 281).
[25] In re Personal Restraint of Cruze, 169 Wash.2d 422, 427, 237 P.3d 274 (2010) (quoting Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002))
[26] Id. (quoting Christensen v. Ellsworth, 162 Wash.2d 365, 373, 173 P.3d 228 (2007)).
[27] 148 Wash.2d 876, 64 P.3d 10 (2003).
[28] Id. at 879, 64 P.3d 10.
[29] Id.
[30] Id. at 886-87, 64 P.3d 10.
[31] Id. at 884, 64 P.3d 10.
[32] Id. at 884-85, 64 P.3d 10.
[33] Id. at 881, 64 P.3d 10.
[34] Id. at 885, 64 P.3d 10. See also Drinkwitz v. Alliant Techsystems, Inc., 140 Wash.2d 291, 298, 996 P.2d 582 (2000); Inniss v. Tandy Corp., 141 Wash.2d 517, 524, 7 P.3d 807 (2000).
[35] Stahl, 148 Wash.2d at 886, 64 P.3d 10.
[36] Id. at 886, 64 P.3d 10; Inniss, 141 Wash.2d at 523-34, 7 P.3d 807; Drinkwitz, 140 Wash.2d at 298, 996 P.2d 582.
[37] Laws of 1959, ch. 294. Subsequent amendments have not materially altered the definitions of "employ" or "employee."
[38] RCW 49.46.130; Drinkwitz, 140 Wash.2d at 299, 996 P.2d 582.
[39] Stahl, 148 Wash.2d at 885, 64 P.3d 10; Inniss, 141 Wash.2d at 523-24, 7 P.3d 807; Drinkwitz, 140 Wash.2d at 298, 996 P.2d 582. See also Cornelius J. Peck, Labor Law, 34 Wash. L.Rev. 316, 317 n.5, n.6 (1959) (citing provisions adopted directly from the FLSA and provisions based in large part on the FLSA).
[40] 29 U.S.C. § 203(g).
[41] 29 U.S.C. § 203(e)(1). This definition is followed by enumerated exceptions, none of which is relevant here.
[42] Professor Cornelius Peck authored a comment on the MWA in the Washington Law Review the year that the MWA was enacted. He observed that many of the provisions of that statute, including the definitions of "employ," "employer," and "employee," were adopted from the FLSA. Professor Peck further noted that the MWA provided that compliance with the FLSA "shall be deemed to constitute compliance with crucial sections of the [MWA]." Cornelius J. Peck, Labor Law, 34 WASH. L.REV. 316 (1959).
[43] See Inniss, 141 Wash.2d at 523-24, 7 P.3d 807; Laws 1975, ch. 289 (conforming state minimum wage laws to federal laws).
[44] United States v. Silk, 331 U.S. 704, 713, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947).
[45] Id.; Bartels, 332 U.S. at 130, 67 S.Ct. 1547; United States v. Rosenwasser, 323 U.S. 360, 362-63, 65 S.Ct. 295, 89 L.Ed. 301 (1945).
[46] See, e.g., Real v. Driscoll Strawberry Associates, Inc., 603 F.2d 748, 754 (9th Cir. 1979).
[47] See Sureway Cleaners, 656 F.2d at 1370; Real, 603 F.2d at 754.
[48] Rutherford Food Corp. v. McComb, 331 U.S. 722, 730, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947). See also Bartels, 332 U.S. at 130, 67 S.Ct. 1547; Sureway Cleaners, 656 F.2d at 1370.
[49] Massey v. Tube Art Display, Inc., 15 Wash. App. 782, 785-88, 551 P.2d 1387(1976).
[50] Id.
[51] 1C LARSON, THE LAW OF WORKMEN'S COMPENSATION § 43.42, at 8-20 (1986).
[52] Compare Massey, 15 Wash.App. at 787-88, 551 P.2d 1387 ("[R]ight to control the negligent actor's physical conduct of the performance of the service" constitutes the test.) and Bostain, 159 Wash.2d at 712, 153 P.3d 846 (remedial statutes in Title 49 should be liberally construed to carry out the legislature's goal of protecting employees) (internal citations omitted), and Stahl, 148 Wash.2d at 881, 64 P.3d 10 ("Employer exemptions from remedial legislation such as the MWA will be `narrowly construed and applied only to situations which are plainly and unmistakably consistent with the terms and spirit of the legislation.'").
[53] See, e.g., Brock, 840 F.2d at 1058-59; DialAmerica Mktg., 757 F.2d at 1383; Brandel, 736 F.2d at 1117; Lauritzen, 835 F.2d at 1535; Sureway Cleaners, 656 F.2d at 1370; Dole, 875 F.2d at 805.
[54] Id.
[55] 6 Washington Practice: Washington Pattern Jury Instructions: Civil 50.11.01, at 458-59 (2005) (WPI).
[56] These factors appear to be adopted from Sureway Cleaners, 656 F.2d at 1370, a FLSA case.
[57] This factor appears to be adopted from Hollingbery v. Dunn, 68 Wash.2d 75, 81, 411 P.2d 431 (1966) and WPI 50.11.01.
[58] This factor appears to be adopted from Hollingbery, 68 Wash.2d 75, 411 P.2d 431, WPI 50.11.01, and Estrada v. FedEx, 154 Cal.App.4th 1, 10, 64 Cal.Rptr.3d 327 (2007).
[59] WPI 50.11.01; Ebling v. Gove's Cove, Inc., 34 Wash.App. 495, 663 P.2d 132 (1983); Hollingbery, 68 Wash.2d at 80, 411 P.2d 431.
[60] Sureway Cleaners, 656 F.2d at 1370.
[61] Stahl, 148 Wash.2d at 886, 64 P.3d 10.
[62] Statement of Additional Authorities by Appellant/Plaintiffs at 1 (Technical Bulletin # 11 dated November 10, 2009).
[63] RCW 49.46.010, .040, .090(2).
[64] Wash. Water Power Co. v. Wash. State Human Rights Comm'n, 91 Wash.2d 62, 68-69, 586 P.2d 1149 (1978).
[65] Statement of Additional Authorities by Appellant/Plaintiffs at 1 (Technical Bulletin # 11 dated November 10, 2009).
[66] This is also consistent with the approach adopted by a number of other states, including Pennsylvania, New Mexico, Maine, Illinois, Michigan, Alaska, and Oregon, which all look to the FLSA for the relevant test. Com., Dep't of Labor and Indus., Bureau of Labor Law Compliance v. Stuber, 822 A.2d 870 (Pa.Cmwlth.Ct. 2003), aff'd by, 580 Pa. 66, 859 A.2d 1253 (2004); Garcia v. Am. Furniture Co., 101 N.M. 785, 789, 689 P.2d 934 (1984); People ex rel. Dep't of Labor v. MCC Home Health Care, Inc., 339 Ill.App.3d 10, 19-21, 273 Ill.Dec. 896, 790 N.E.2d 38 (2003); Buckley v. Professional Plaza Clinic Corp. 281 Mich.App. 224, 234, 761 N.W.2d 284 (2008); Jeffcoat v. Dep't of Labor, 732 P.2d 1073, 1075 (Alaska 1987); Presley v. Bureau of Labor and Indus., 200 Or.App. 113, 117, 112 P.3d 485, 487 (2005). See also Director of Bureau of Labor Standards v. Cormier, 527 A.2d 1297, 1299-1300 (Me. 1987); Andrews v. Kowa Printing Corp. 351 Ill.App.3d 668, 677-78, 286 Ill.Dec. 548, 814 N.E.2d 198 (2004).
[67] 34 Wash.App. 495, 663 P.2d 132 (1983).
[68] Id. at 497, 663 P.2d 132.
[69] Id.
[70] Id.
[71] 68 Wash.2d 75, 411 P.2d 431 (1966).
[72] Ebling, 34 Wash.App. at 498, 663 P.2d 132.
[73] Hollingbery, 68 Wash.2d at 76, 79-80, 411 P.2d 431.
[74] Id. at 80-81, 411 P.2d 431.
[75] 154 Cal.App.4th 1, 64 Cal.Rptr.3d 327 (2007).
[76] 48 Cal.3d 341, 256 Cal.Rptr. 543, 769 P.2d 399 (1989).
[77] Estrada, 154 Cal.App.4th at 11, 64 Cal.Rptr.3d 327.
[78] Borello, 48 Cal.3d at 349, 256 Cal.Rptr. 543, 769 P.2d 399.
[79] Id.
[80] Id. at 350, 256 Cal.Rptr. 543, 769 P.2d 399.
[81] Id.
[82] 49 Cal.4th 35, 109 Cal.Rptr.3d 514, 231 P.3d 259 (2010).
[83] Id. at 48-52, 109 Cal.Rptr.3d 514, 231 P.3d 259.
[84] Id. at 52-66, 109 Cal.Rptr.3d 514, 231 P.3d 259 ("In no sense is the IWC's definition of the term `employ' based on federal law.").
[85] Id. at 52-55, 109 Cal.Rptr.3d 514, 231 P.3d 259.
[86] Id. at 59, 109 Cal.Rptr.3d 514, 231 P.3d 259 (emphasis added).
[87] See Bartels, 332 U.S. at 130, 67 S.Ct. 1547; Agnew, 712 F.2d at 1510; Brock, 840 F.2d at 1058-59; DialAmerica Mktg., 757 F.2d at 1383; Steelman, 473 F.3d at 128; Herman, 161 F.3d at 303; Brandel, 736 F.2d at 1117; Lauritzen, 835 F.2d at 1535; Blair, 420 F.3d at 829; Sureway Cleaners, 656 F.2d at 1370; Dole, 875 F.2d at 805; Brouwer, 139 F.3d at 818-19.
[88] See, e.g., Herman, 161 F.3d at 303.
[89] See Brock, 840 F.2d at 1058-59; DialAmerica Mktg., 757 F.2d at 1383; Brandel, 736 F.2d at 1117; Lauritzen, 835 F.2d at 1535; Sureway Cleaners, 656 F.2d at 1370; Dole, 875 F.2d at 805.
[90] Clerk's Papers at 1819-20 (emphasis added).
[91] Miller v. Campbell, 164 Wash.2d 529, 539, 192 P.3d 352 (2008) (internal quotations omitted).
[92] Id.
[93] Bartley-Williams v. Kendall, 134 Wash.App. 95, 98, 138 P.3d 1103 (2006).
[94] In re Marriage of Littlefield, 133 Wash.2d 39, 46-47, 940 P.2d 1362 (1997).
[95] Id. at 47, 940 P.2d 1362.
[96] Robinson v. Khan, 89 Wash.App. 418, 420, 948 P.2d 1347 (1998) ("A notice of cross-review is essential if the respondent `seeks affirmative relief as distinguished from the urging of additional grounds for affirmance.'") (quoting Phillips Building Co. v. An, 81 Wash.App. 696, 700 n. 3, 915 P.2d 1146 (1996); RAP 2.4(a)).
[97] King v. Clodfelter, 10 Wash.App. 514, 521, 518 P.2d 206 (1974).
[98] Clerk's Papers at 2169.
[99] Clerk's Papers at 2174.
[100] Cox, 141 Wash.2d at 442, 5 P.3d 1265.
[101] Clerk's Papers at 2194 (emphasis added).
[102] Report of Proceedings (Mar. 27, 2009) at 16.
[103] Report of Proceedings (Mar. 30, 2009) at 78.
[104] Report of Proceedings (Mar. 30, 2009) at 56.
[105] Clerk's Papers at 2193.
[106] See Rosario v. Livaditis, 963 F.2d 1013, 1017-18 (7th Cir.1992) ("The fact that there is some factual variation among the class grievances will not defeat a class action.").
[107] See Civil Rule 23.
[108] Clerk's Papers at 209-19.
[109] Oda v. State, 111 Wash.App. 79, 93, 44 P.3d 8 (2002).
[110] Miller v. Farmer Bros. Co., 115 Wash.App. 815, 820, 64 P.3d 49 (2003).
[111] Id. at 825, 64 P.3d 49.
[112] Oda, 111 Wash.App. at 91, 44 P.3d 8.
[113] See, e.g., Real, 603 F.2d at 754.
[114] Martin v. Selker Bros., Inc., 949 F.2d 1286, 1298 (3rd Cir.1991) ("It is not necessary for every single affected employee to testify in order to prove violations or to recoup back wages. The testimony and evidence of representative employees may be sufficient to establish prima facie proof of a pattern and practice of FLSA violations.").
[115] See Reich v. Gateway Press, Inc., 13 F.3d 685, 701-02 (3rd Cir.1994); Martin, 949 F.2d at 1298 ("Not all employees need to testify in order to prove the violations or to recoup back wages. Rather, the Secretary can rely on testimony and evidence from representative employees to meet the initial burden of proof requirement. Once the pattern is established, the burden shifts to the employer to rebut the existence of violations or to prove that individual employees are excepted from the pattern or practice."); Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-88, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (holding that the plaintiff's burden in a collective action for uncompensated work under FLSA is to produce sufficient evidence to show the amount and extent of the uncompensated work as a matter of "just and reasonable inference").
[116] Clerk's Papers at 2194 (emphasis added).
[117] ___ F.Supp.2d ___, 2010 WL 3239363 (2010).
[118] Id. at *1, *20-21.%
[119] Id. at *27-28.
[120] Id. at *20.
[121] See, e.g., Anderson, 328 U.S. at 688, 66 S.Ct. 1187 ("[H]ere we are assuming that the employee has proved that he has performed work and has not been paid in accordance with the statute.... The uncertainty lies only in the amount of damages arising from the statutory violation by the employer.").
[122] 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).
[123] Id. at 686-87, 66 S.Ct. 1187.
[124] Id. at 687, 66 S.Ct. 1187.
[125] Id. at 688, 66 S.Ct. 1187.
[126] Farmboy, 127 Wash.2d at 92, 896 P.2d 682.
[127] Id.
[128] Clerk's Papers at 2220.
[129] See Graves, 94 Wash.2d at 302-03, 616 P.2d 1223; Brock, 840 F.2d at 1059.
[130] See Zurfluh v. Lewis County, 199 Wash. 378, 381, 91 P.2d 1002 (1939), overruled in part on other grounds by, Portland-Seattle Auto Freight v. Jones, 15 Wash.2d 603, 131 P.2d 736 (1942) (holding question of proximate cause is a mixed question of law and fact which must be submitted to the jury unless the facts are undisputed); Ling Nan Zheng v. Liberty Apparel Co., Inc., 617 F.3d 182, 185-86 (2nd Cir.2010) (holding that in the context of a jury trial, whether a defendant is a plaintiffs' joint employer is a mixed question of law and fact and is properly a question for the jury); Davila v. Yellow Cab Co., 333 Ill.App.3d 592, 595, 267 Ill.Dec. 348, 776 N.E.2d 720 (2002) (holding question of whether employer/employee relationship exists is a mixed question of law and fact to be submitted to a jury unless the facts are undisputed); Johnson v. Unified Government of Wyandotte County, 180 F.Supp.2d 1192, 1202-03 (D.Kan.2001) (concluding that special verdict form requiring jury to decide employee/independent contractor status was not error because questions of fact and questions of law were inextricably intertwined, and because verdict form was not prejudicial).
[131] Id.
[132] 76 Wash.App. 577, 886 P.2d 1158 (1995).
[133] Id. at 582, 886 P.2d 1158.